STROUD, Judge.
 

 *425
 
 Jerry Lane Harwood, Jr. ("defendant") appeals from judgments in which the trial court found defendant in willful violation of his probation, revoked his probation, and activated five consecutive sentences. Defendant contends that the trial court lacked subject matter jurisdiction. We vacate.
 

 I. Background
 

 On or about 28 April 2008, a grand jury indicted defendant for one count of felonious burning of a public building and forty-three counts of felonious cruelty to animals for offenses committed in March 2006,
 
 *426
 
 arising from the burning of the Dan Nicholas Park petting zoo.
 
 See
 
 N.C. Gen.Stat. §§ 14-59, -360(b) (2005). On or about 23 June 2008, a grand jury indicted defendant for two counts of felonious breaking or entering, two counts of felonious larceny pursuant to a breaking or entering, two counts of felonious possession of stolen goods, thirteen counts of felonious breaking or entering a motor vehicle, two counts of financial transaction card theft, one count of possession of burglary tools, twelve counts of misdemeanor larceny, and one count of larceny of a firearm for offenses committed in April 2008.
 
 [1]
 

 See id.
 
 §§ 14-54(a), -55, -56, -71.1, -72(a), (b), -113.9(a)(1) (2007). At a 29 May 2009 hearing, defendant pled no contest to all seventy-nine charges.
 

 On or about 29 May 2009, the trial court consolidated defendants' convictions into seven judgments. In the first judgment (No. 08CRS052862), the trial court consolidated one count of felony burning of a public building and seven counts of felonious cruelty to animals, and sentenced defendant to 16 to 20 months' imprisonment. The trial court also credited defendant for 405 days of imprisonment. In the second judgment (No. 08CRS052942), the trial court consolidated two counts of felonious breaking or entering, two counts of felonious larceny pursuant to a breaking or entering, two counts of felonious possession of stolen goods, one count of possession of burglary tools, and one count of larceny of a firearm, and sentenced defendant to 6 to 8 months' imprisonment. In the third judgment (No. 08CRS052871), the trial court consolidated nine charges of felonious cruelty to animals and sentenced defendant to 6 to 8 months' imprisonment. In the fourth judgment (No. 08CRS052880), the trial court consolidated eight charges of felonious cruelty to animals and sentenced defendant to 6 to 8 months' imprisonment. In the fifth judgment (No. 08CRS052888), the trial court consolidated eight charges of felonious cruelty to animals and sentenced defendant to 6 to 8 months' imprisonment. In the sixth
 
 *118
 
 judgment (No. 08CRS052896), the trial court consolidated eleven charges of felonious cruelty to animals and sentenced defendant to 6 to 8 months' imprisonment. In the seventh judgment (No. 08CRS052916), the trial court consolidated thirteen charges of breaking or entering a motor vehicle, twelve charges of misdemeanor larceny, and two charges of financial transaction card theft, and sentenced defendant to 6 to 8
 
 *427
 
 months' imprisonment. The trial court ordered that defendant serve all seven sentences consecutively.
 

 The trial court suspended the last five sentences (Nos.08CRS052871, 08CRS052880, 08CRS052888, 08CRS052896, 08CRS052916) and placed defendant on 48 months of supervised probation. The trial court also ordered that defendant pay $2,337 in restitution, a $1,000 fine and a $200 community service fee. The trial court ordered that during his probation, defendant complete 100 hours of community service, which could not involve any animals or any areas where they are kept, housed, or boarded. The trial court also included the following among the conditions of defendant's probation: (1) submit to warrantless searches for stolen goods, controlled substances, contraband, child pornography, weapons, pets, and incendiaries; (2) have no contact with Joshua Dunaway, a co-defendant; and (3) obtain a psychological evaluation and abide by all of its recommendations. In each of the five judgments, the trial court failed to either check the box to order that the probation would begin upon defendant's release from incarceration or the box to order that the probation would begin at the expiration of another sentence. In each of the last four judgments, the trial court checked a box to order that defendant comply with the probation conditions described in the third judgment (No. 08CRS052871).
 

 On 11 June 2010, defendant was released from incarceration.
 
 [2]
 
 On 27 January 2014, a probation officer filed probation violation reports alleging that defendant had been convicted by a court in Tennessee for one count of aggravated burglary, four counts of fraudulent use of a credit card, two counts of theft, one count of attempted theft, one count of vandalism, and one count of possession of burglary tools. At a 14 March 2014 hearing, defendant admitted to willfully violating the terms of his probation without lawful justification. On or about 14 March 2014, the trial court revoked defendant's probation, activated all five suspended sentences, and ordered that defendant serve them consecutively. Defendant gave notice of appeal in open court.
 

 II. Subject Matter Jurisdiction
 

 A. Standard of Review
 

 The issue of a court's jurisdiction over a matter may be raised at any time, even for the first time on appeal
 
 *428
 
 or by a court
 
 sua sponte.
 
 It is well settled that a court's jurisdiction to review a probationer's compliance with the terms of his probation is limited by statute. Where jurisdiction is statutory and the Legislature requires the Court to exercise its jurisdiction in a certain manner, to follow a certain procedure, or otherwise subjects the Court to certain limitations, an act of the Court beyond these limits is in excess of its jurisdiction. If the court was without authority, its judgment is void and of no effect.
 

 An appellate court necessarily conducts a statutory analysis when analyzing whether a trial court has subject matter jurisdiction in a probation revocation hearing, and thus conducts a
 
 de novo
 
 review.
 

 State v. Gorman,
 

 221 N.C.App. 330
 
 , 333,
 
 727 S.E.2d 731
 
 , 733 (2012) (citations, quotation marks, brackets, and ellipsis omitted). "In a criminal case, ... North Carolina requires the State to prove jurisdiction beyond a reasonable doubt. .... The burden of perfecting the trial court's jurisdiction for a probation revocation hearing after defendant's period of probation has expired lies squarely with the State."
 
 State v. Moore,
 

 148 N.C.App. 568
 
 , 570-71,
 
 559 S.E.2d 565
 
 , 566-67 (2002).
 

 *119
 
 B. Analysis
 

 In his sole argument on appeal, defendant contends that the 2014 trial court lacked subject matter jurisdiction to revoke his probation, because the probation officer filed the probation violation reports after defendant's probation had expired. Defendant argues that his four-year period of probation began on or about 29 May 2009 and thus expired on or about 29 May 2013, several months before the probation officer filed violation reports on 27 January 2014. N.C. Gen.Stat. § 15A-1344(f) (2013) provides that, in order for a trial court to revoke a defendant's probation after the expiration of the period of probation, the State must have filed a written violation report
 
 before
 
 the expiration of the period of probation, among other conditions.
 

 The State responds that defendant's period of probation actually began upon his release from incarceration on 11 June 2010. According to the State, defendant's four-year period of probation expired 11 June 2014, after the 2014 trial court revoked defendant's probation, and thus the trial court did not violate N.C. Gen.Stat. § 15A-1344(f). The State acknowledges that the 2009 trial court failed to check the box to indicate that the period of probation would begin upon defendant's release from incarceration. But the State argues that this omission was due to a
 
 *429
 
 clerical mistake and requests that we remand this case to the trial court for correction of that mistake.
 

 N.C. Gen.Stat. § 15A-1346 (2013) provides that the default rule is that a defendant's period of probation runs concurrently with his period of imprisonment:
 

 (a) Commencement of Probation.-Except as provided in subsection (b), a period of probation commences on the day it is imposed and runs concurrently with any other period of probation, parole, or imprisonment to which the defendant is subject during that period.
 

 (b) Consecutive and Concurrent Sentences.-If a period of probation is being imposed at the same time a period of imprisonment is being imposed or if it is being imposed on a person already subject to an undischarged term of imprisonment, the period of probation may run either concurrently or consecutively with the term of imprisonment, as determined by the court. If not specified, it runs concurrently.
 

 North Carolina Rule of Civil Procedure 60(a) provides the rule for clerical errors:
 

 Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the judge at any time on his own initiative or on the motion of any party and after such notice, if any, as the judge orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate division, and thereafter while the appeal is pending may be so corrected with leave of the appellate division.
 

 N.C. Gen.Stat. § 1A-1, Rule 60(a) (2013). However,
 

 [t]he court's authority under Rule 60(a) is limited to the correction of clerical errors or omissions. Courts do not have the power under Rule 60(a) to affect the substantive rights of the parties or correct substantive errors in their decisions. We have repeatedly rejected attempts to change the substantive provisions of judgments under the guise of clerical error.
 

 Gerhauser v. Van Bourgondien,
 
 --- N.C.App. ----, ----,
 
 767 S.E.2d 378
 
 , 384 (2014) (citations omitted). In
 
 Gerhauser,
 
 the trial court
 
 *430
 
 originally held that it had subject matter jurisdiction under N.C. Gen.Stat. § 50A-201(a)(2).
 

 Id.
 

 at ----,
 
 767 S.E.2d at 383
 
 . But after the plaintiff filed a Rule 60 motion, the trial court changed its basis for subject matter jurisdiction and held that it had jurisdiction instead under N.C. Gen.Stat. § 50A-201(a)(4).
 

 Id.
 

 at ----,
 
 767 S.E.2d at 382-84
 
 . This Court held that this change was substantive, not clerical, because the " trial court did not merely cite an incorrect subsection of N.C. Gen.Stat. § 50A-201 in the [original order]; the trial court quoted large portions of the statute in detail and made findings of fact and conclusions of law based upon the provisions of N.C. Gen.Stat. § 50A-201(a)(2) [.]"
 

 Id.
 

 at ----,
 
 767 S.E.2d at 383
 
 .
 
 *120
 
 Here, in each of the five judgments in which the 2009 trial court placed defendant on supervised probation, the 2009 trial court failed to either check the box to order that the probation would begin upon defendant's release from incarceration or check the box to order that the period of probation would begin at the expiration of another sentence. We first note that the fact that the 2009 trial court made both omissions five times strongly suggests that the trial court did not make a mistake but rather intended for defendant's probation to run concurrently with his incarceration, as this is the default rule under N.C. Gen.Stat. § 15A-1346. We also note that in each of the last four judgments, the 2009 trial court checked a box to order that defendant comply with the probation conditions described in the third judgment (No. 08CRS052871), which also indicates that the trial court was being careful in ordering the details of defendant's probation. Additionally, even assuming the 2009 trial court made a mistake, we hold that this mistake would be a substantive error, rather than a clerical one. Changing this provision would retroactively extend defendant's period of probation by more than one year and would grant the trial court subject matter jurisdiction to activate five consecutive sentences of 6 to 8 months' imprisonment. Because this provision is substantive, we lack authority to change it under Rule 60(a).
 
 See
 

 id.
 

 at ----,
 
 767 S.E.2d at 384
 
 .
 

 The State argues that the 2009 trial court's comments to defendant indicate that it intended for defendant's probation to begin upon his release from incarceration. At the 29 May 2009 hearing, the trial court addressed defendant: "I want you to know that I have imposed a very strenuous and very serious probation period for you. I do that out of a sincere desire to see you walk on a very straight and narrow path." But these comments are not inconsistent with a decision that defendant's probation run concurrently with defendant's active sentences. Defendant's total active sentence was 22 to 28 months' imprisonment. But the 2009 trial court credited defendant 405 days, approximately 13 months, so defendant's period of incarceration beginning from the
 
 *431
 
 date of the 29 May 2009 hearing was between 9 to 15 months. Defendant was actually released on 11 June 2010, approximately 12 months after the hearing, which fits within this range. According to the judgments on their face, defendant was on probation until 29 May 2013, almost three years after his release from incarceration on 11 June 2010. During this period, defendant was required to complete 100 hours of community service, which could not involve any animals or any areas where they are kept, housed, or boarded. Defendant was also subject to the following conditions: (1) submit to warrantless searches for stolen goods, controlled substances, contraband, child pornography, weapons, pets, and incendiaries; (2) have no contact with Joshua Dunaway, a co-defendant; and (3) obtain a psychological evaluation and abide by all of its recommendations. Accordingly, we hold that the trial court's comments to defendant at the 29 May 2009 hearing were not inconsistent with the judgments on their face as they impose a lengthy period of probation with several conditions. Additionally, as discussed above, even if the 2009 trial court did make a mistake, we cannot change a substantive error.
 
 See
 

 id.,
 

 767 S.E.2d at 384
 
 .
 

 The State next argues that the 2009 trial court intended for defendant's probation to begin upon defendant's release from incarceration, because defendant would not be able to complete his 100 hours of community service otherwise. But as discussed above, according to the judgments on their face, defendant served nearly three years of his probation after being released from incarceration. Because completing 100 hours of community service in three years is certainly feasible, we disagree with the State. The State further argues that given the large number of charges involved in this case, "it is no surprise that such clerical errors were made." But the 2009 trial court properly included all seventy-nine charges in the seven judgments, and no mistake in the judgments is readily apparent from the record.
 

 The State finally points out that in the third judgment (No. 08CRS052871), the 2009 trial court checked the box to order that the first suspended sentence run consecutively to the second active sentence. The State asks,
 
 *121
 
 "If the trial court intended for the 48-month probation period to run concurrently with Defendant's two active sentences starting on May 29, 2009, why would this box have been checked, indicating that the sentence was to run after the second of the two active sentences?" The trial court checked this box because it intended for the five suspended sentences of 6 to 8 months' imprisonment to serve as a penalty for a probation violation. At the 29 May 2009 hearing, the trial court emphasized this penalty to defendant: "[I]f you reappear before the Superior Court on probation violations for failure to comply with these
 
 *432
 
 conditions, then you are looking at five back-to-back six-to-eight sentences. Do you understand that?" The fact that the trial court checked this box indicates that it intended for the first suspended sentence to run consecutively to the second active sentence, but it does not indicate that the trial court intended for the
 
 probation period
 
 to run consecutively to the second active sentence.
 

 In summary, we hold that the State has failed to show from the record that the 2009 trial court intended for defendant's probation to begin upon his release from incarceration. Assuming
 
 arguendo
 
 that the State had made this showing, we would be without authority to make such a substantive change to the judgments.
 
 See
 

 id.,
 

 767 S.E.2d at 384
 
 . Accordingly, we hold that defendant's probation expired on or about 29 May 2013, several months before the probation officer filed the probation violation reports. Therefore, under N.C. Gen.Stat. § 15A-1344(f), the 2014 trial court lacked subject matter jurisdiction to revoke defendant's probation and activate his five remaining sentences.
 
 [3]
 

 III. Conclusion
 

 Because we hold that the 2014 trial court lacked subject matter jurisdiction to revoke defendant's probation, we vacate the 2014 judgments.
 

 VACATED.
 

 Judges DILLON and DAVIS concur.
 

 [1]
 

 We note that the indictment for possession of burglary tools lists the offense date as 19 April 2007, whereas the judgment lists this date as 19 April 2008. Given that every other June 2008 indictment lists an offense date in April 2008, we assume that the date listed in the judgment is correct and note that this discrepancy is immaterial to our analysis.
 

 [2]
 

 Under North Carolina Rule of Evidence 201, we take judicial notice of this fact from the Department of Public Safety website's offender search results.
 
 See
 
 N.C. Gen.Stat. § 8C-1, Rule 201 (2013) ;
 
 State v. Surratt,
 
 --- N.C.App. ----, ----,
 
 773 S.E.2d 327
 
 , 331 (2015).
 

 [3]
 

 We note that N.C. Gen.Stat. § 15A-1344(g) (2009) provides: "If there are pending criminal charges against the probationer in any court of competent jurisdiction, which, upon conviction, could result in revocation proceedings against the probationer for violation of the terms of this probation, the probation period shall be tolled until all pending criminal charges are resolved. The probationer shall remain subject to the conditions of probation, including supervision fees, during the tolled period. If the probationer is acquitted or if the new charge is dismissed, the time spent on probation during the tolled period shall be credited against the period of probation." But this subsection is inapplicable to defendant because it applies to offenses committed on or after 1 December 2009.
 
 2009 N.C. Sess. Laws 667
 
 , 675, 679, ch. 372, §§ 11(b), 20. We also note that Session Law 2009-372 also deleted similar tolling language from N.C. Gen.Stat. § 15A-1344(d) and that this amendment applies to
 
 hearings
 
 held on or after 1 December 2009.
 
 2009 N.C. Sess. Laws 667
 
 , 674-75, 679, ch. 372, §§ 11(a), 20. Because defendant committed the underlying offenses before 1 December 2009 and his probation revocation hearing occurred after 1 December 2009, we hold that these tolling provisions are inapplicable here.
 
 See
 

 State v. Sitosky,
 
 --- N.C.App. ----, ----,
 
 767 S.E.2d 623
 
 , 627 (2014) ("[W]e conclude that Defendant, who committed her offenses ... prior to 1 December 2009 but had her revocation hearing after 1 December 2009, was not covered by either statutory provision-§ 15A-1344(d) or § 15A-1344(g) -authorizing the tolling of probation periods for pending criminal charges."),
 
 disc. review denied,
 
 --- N.C. ----,
 
 768 S.E.2d 847
 
 (2015).