HAMPSON, Judge.
 

 *861
 

 *394
 

 Factual and Procedural Background
 

 Joshua Elijah Tincher (Defendant) appeals from Judgments revoking his probation. In addition, we grant Defendant's Petition for Writ of
 
 Certiorari
 
 to review the trial court's Order and Judgment holding him in Criminal Contempt. The Record before us shows the following:
 

 On 26 June 2006, Defendant was charged via two indictments. Under each indictment, in cases 06 CRS 51515 and 06 CRS 51521, Defendant was charged with Common Law Robbery and the Statutory Aggravating Factor of committing the offense while on pretrial release on another charge, 06 CRS 51525. On 26 February 2008, Defendant pleaded guilty to these and other charges. At the time the Judgments in question were entered, Defendant was serving an active sentence pursuant to the 06 CRS 51525 Judgment.
 

 In both the 06 CRS 51515 Judgment and the 06 CRS 51521 Judgment, the trial court sentenced Defendant to a minimum of 20 months and a maximum of 24 months' imprisonment and then suspended those sentences in favor of 36 months of supervised probation. In the event that Defendant violated his probation upon the expiration of the active sentence in the 06 CRS 51525 Judgment, the trial court indicated that prison sentences in both the 06 CRS 51515 Judgment and 06 CRS 51521 Judgment were to run consecutively with one another. Additionally, in the 06 CRS 51515 Judgment, the trial court indicated on the Judgment that the 36-month probationary period would begin at the expiration of the active sentence in the 06 CRS 51525 Judgment. However, in the 06 CRS 51521 Judgment, the trial court did not indicate when the 36-month probationary period would begin.
 

 On 8 February 2018, Defendant's Probation Officer, Catherine N. Russell (Officer Russell), filed two Probation-Violation Reports alleging multiple probation violations. As a result, on 16 April 2018, the trial court ultimately entered two Judgments revoking Defendant's probation in 06 CRS 51515 and 06 CRS 51521. In addition, as a result of Defendant's alleged conduct in open court following the probation-revocation proceeding, the trial court entered a Criminal-Contempt Order against Defendant, holding Defendant in Criminal Contempt and ordering him to serve 30 additional days in the custody of the North Carolina Department of Adult Correction. The trial court then entered a Criminal-Contempt Judgment requiring that the Criminal-Contempt sentence run consecutively with Defendant's other sentences upon his revoked probation.
 

 *395
 

 Issues
 

 The dispositive issues in this case are: (I) Whether the trial court lacked subject-matter jurisdiction to revoke Defendant's probation in 06 CRS 51521; and (II) Whether the trial court erred in summarily imposing Direct Criminal Contempt.
 

 Analysis
 

 I. Subject-Matter Jurisdiction
 

 Defendant contends the trial court lacked subject-matter jurisdiction to revoke his probation in the 06 CRS 51521 Judgment because the Probation-Violation Report was filed outside of the probationary period set out in that case. We agree.
 

 A. Standard of Review
 

 "[T]he issue of a court's jurisdiction over a matter may be raised at any time, even for the first time on appeal or by a court
 
 sua sponte
 
 ."
 
 State v. Webber
 
 ,
 
 190 N.C. App. 649
 
 , 650,
 
 660 S.E.2d 621
 
 , 622 (2008) (citation omitted). "It is well settled that a court's jurisdiction to review a probationer's compliance with the terms of his probation is limited by statute."
 
 State v. Reinhardt
 
 ,
 
 183 N.C. App. 291
 
 , 292,
 
 644 S.E.2d 26
 
 , 27 (2007) (alteration, citation, and quotation marks omitted). "[A]n appellate court necessarily conducts a statutory analysis when analyzing
 
 *862
 
 whether a trial court has subject matter jurisdiction in a probation revocation hearing, and thus conducts a
 
 de novo
 
 review."
 
 State v. Satanek
 
 ,
 
 190 N.C. App. 653
 
 , 656,
 
 660 S.E.2d 623
 
 , 625 (2008) (citation omitted). "Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal."
 
 State v. Williams
 
 ,
 
 362 N.C. 628
 
 , 632-33,
 
 669 S.E.2d 290
 
 , 294 (2008) (citation and quotation marks omitted).
 

 B. Probation Revocation
 

 Defendant's probation was revoked in both file 06 CRS 51515 and file 06 CRS 51521 on 16 April 2018. Defendant does not challenge the revocation of probation in 06 CRS 51515. Rather, Defendant asserts the revocation in 06 CRS 51521 was erroneous because the 06 CRS 51521 Judgment did not state that the probation was to run concurrently with the 06 CRS 51515 Judgment's probation or consecutively with the 06 CRS 51525 Judgment's active sentence. Defendant argues, therefore, according to N.C. Gen. Stat. § 15A-1346, the probation ran concurrently with his active prison sentence already in effect in 06 CRS 51525. Defendant contends that because this probation ran concurrently with
 
 *396
 
 his active sentence in 06 CRS 51525, the Parole-Violation Report filed in 06 CRS 51521 was filed after his probationary period had already expired, thereby depriving the trial court of jurisdiction to revoke his probation.
 

 Section 15A-1346 of our General Statutes states:
 

 (a) Commencement of Probation. - Except as provided in subsection (b), a period of probation commences on the day it is imposed and runs concurrently with any other period of probation, parole, or imprisonment to which the defendant is subject during that period.
 

 (b) Consecutive and Concurrent Sentences. - If a period of probation is being imposed at the same time a period of imprisonment is being imposed or if it is being imposed on a person already subject to an undischarged term of imprisonment, the period of probation may run either concurrently or consecutively with the term of imprisonment, as determined by the court.
 
 If not specified, it runs concurrently.
 

 N.C. Gen. Stat. § 15A-1346 (2017) (emphasis added). "A careful reading of the statute shows that any sentence of probation must run concurrently with any other probation sentences imposed on a defendant. The only power to adjust the timing of a probation sentence is that found under N.C. Gen. Stat. § 15A-1346(b)."
 
 State v. Canady
 
 ,
 
 153 N.C. App. 455
 
 , 459-60,
 
 570 S.E.2d 262
 
 , 265 (2002) (citation omitted);
 
 see also
 

 State v. Cousar
 
 ,
 
 190 N.C. App. 750
 
 , 757,
 
 660 S.E.2d 902
 
 , 906 (2008) (holding that where the trial court entered two active sentences and five suspended sentences and the judgment states the five suspended sentences,
 
 if activated
 
 , run consecutively with the two active sentences but does not specify whether these five
 
 probationary
 
 sentences run concurrently or consecutively with the two active sentences, the five suspended sentences run concurrently with the two active sentences pursuant to
 
 Canady
 
 and N.C. Gen. Stat. § 15A-1346(b) ).
 

 In the instant case, it is undisputed that in the "Suspension of Sentence" section of the Judgment form for 06 CRS 51521, the boxes on Lines 3 and 4, which specify when the period of probation would begin, are not marked or checked. Defendant contends, and we agree, the failure to mark one of these boxes requires us to look at the default rule in N.C. Gen. Stat § 15A-1346. Here, because the boxes have not been marked or checked to alter the default rule under N.C. Gen. Stat. § 15A-1346, the probationary period in the 06 CRS 51521 Judgment ran
 
 *397
 
 concurrently with Defendant's ongoing active sentence from the day it was imposed.
 
 See
 
 N.C. Gen. Stat. § 15A-1346(b) ;
 
 see also
 

 Cousar
 
 , 190 N.C. App. at 757, 660 S.E.2d at 906-07 ;
 
 Canady
 
 ,
 
 153 N.C. App. at 459-60
 
 ,
 
 570 S.E.2d at 265
 
 (citation omitted).
 

 The State, however, contends the plea agreement in file 06 CRS 51521-which Defendant, Defendant's trial counsel, and the Prosecutor signed-contained language requiring the probationary period to run at the expiration of the active sentence in file 06 CRS 51525. The State further contends that the trial court provided additional language
 
 *863
 
 to show its intent to have the probationary period imposed in the 06 CRS 51521 Judgment run consecutively with Defendant's active sentence by marking a box in the 06 CRS 51521 Judgment that states, "[t]his sentence shall run at the expiration of sentence imposed in file number 06 CRS 51515." Thus, the State asserts that the trial court's failure to mark an additional box in the 06 CRS 51521 Judgment altering the probationary period was a clerical error.
 

 The State directs us to the plea agreement to infer intent because it references the conditions of the suspended active sentences. However, the plea agreement makes no mention that the probationary period in the 06 CRS 51521 Judgment was to run consecutively to the 06 CRS 51525 Judgment's active sentence. Accordingly, the plea agreement itself does not reflect any intention for the probation to run consecutively with the 06 CRS 51525 Judgment or to alter the default rule under N.C. Gen. Stat. § 15A-1346.
 

 Additionally, even assuming the Record before us showed a clerical error, we have limited authority in correcting clerical errors. If the correction of a clerical error affects the substantive rights of a party or if the correction corrects a substantive error, the Court is without authority to make a change.
 
 State v. Harwood
 
 ,
 
 243 N.C. App. 425
 
 , 429,
 
 777 S.E.2d 116
 
 , 119 (2015) (citations omitted). Furthermore, "[w]e have repeatedly rejected attempts to change the substantive provisions of judgments under the guise of clerical error."
 

 Id.
 

 (citation and quotation marks omitted). In
 
 Harwood
 
 , on 29 May 2009, the trial court sentenced the defendant on seven different judgments.
 

 Id.
 

 at 426
 
 ,
 
 777 S.E.2d at 117
 
 . The trial court suspended the last five of the seven judgments and placed the defendant on 48 months of probation.
 

 Id.
 

 at 427
 
 ,
 
 777 S.E.2d at 118
 
 . On 11 June 2010, the defendant was released from prison on the first two judgments, and on 27 January 2014, a probation officer filed probation-violation reports.
 

 Id.
 

 The defendant was found to be in violation of his probation, and the trial court revoked probation accordingly.
 

 Id.
 

 On appeal, the defendant contended because the judgments did not
 
 *398
 
 indicate when his probation was to begin, his probation began when judgment was entered, in 2009, and thus expired in 2013, several months before the probation-violation reports were filed. In response, the State argued "this omission was due to a clerical mistake" and requested remand for correction of the mistake.
 

 Id.
 

 at 428-29
 
 ,
 
 777 S.E.2d at 119
 
 . In examining the judgments in
 
 Harwood
 
 , this Court disagreed with the State's contention:
 

 [E]ven assuming the 2009 trial court made a mistake, we hold that this mistake would be a substantive error, rather than a clerical one. Changing this provision would retroactively extend defendant's period of probation by more than one year and would grant the trial court subject matter jurisdiction to activate five consecutive sentences of 6 to 8 months' imprisonment. Because this provision is substantive, we lack authority to change it[.]
 

 Id.
 

 at 430
 
 ,
 
 777 S.E.2d at 120
 
 (citation omitted). We therefore concluded the State failed to show the trial court intended for probation to run consecutively with his active prison sentence, and even if it had, we lacked the authority to make "such a substantive change to the judgments."
 

 Id.
 

 at 432
 
 ,
 
 777 S.E.2d at 121
 
 (citation omitted). We further held the trial court lacked subject-matter jurisdiction to revoke the defendant's probation and activate his remaining sentences.
 

 Id.
 

 As in
 
 Harwood
 
 , we conclude-even assuming
 
 arguendo
 
 the trial court intended Defendant's probations to run consecutively-the error was substantive and changing the 06 CRS 51521 Judgment would retroactively extend Defendant's sentence. Therefore, we lack the authority to change it.
 

 Pursuant to N.C. Gen. Stat. § 15A-1346, Defendant's period of probation in the 06 CRS 51521 Judgment ran concurrently with the active sentence imposed in the 06 CRS 51525 Judgment, not consecutively. As such, it expired prior to the filing of the Probation-Violation Reports, and the trial court lacked subject-matter jurisdiction to revoke Defendant's probation. Accordingly, we vacate the trial court's Judgment revoking probation in 06 CRS 51521.
 

 *864
 

 II. Criminal Contempt
 

 Defendant next contends that the trial court failed to make statutorily required findings of fact to support its summary imposition of direct Criminal Contempt, and in the absence of such findings, Defendant
 
 *399
 
 asserts the summary Criminal-Contempt Order, as well as the later Criminal-Contempt Judgment, was improperly entered.
 

 A. Standard of Review
 

 "A contempt hearing is a non-jury proceeding."
 
 State v. Simon
 
 ,
 
 185 N.C. App. 247
 
 , 250,
 
 648 S.E.2d 853
 
 , 855 (2007). "The standard of appellate review for a decision rendered in a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment. Findings of fact are binding on appeal if there is competent evidence to support them, even if there is evidence to the contrary."
 
 Sessler v. Marsh
 
 ,
 
 144 N.C. App. 623
 
 , 628,
 
 551 S.E.2d 160
 
 , 163 (2001) (citations omitted). "The trial court's conclusions of law drawn from the findings of fact are reviewable
 
 de novo
 
 ."
 
 Curran v. Barefoot
 
 ,
 
 183 N.C. App. 331
 
 , 335,
 
 645 S.E.2d 187
 
 , 190 (2007) (citation omitted).
 

 B. Findings of Fact
 

 Pursuant to Section 5A-13(a) of our General Statutes, direct criminal contempt occurs when the act:
 

 (1) Is committed within the sight or hearing of a presiding judicial official; and
 

 (2) Is committed in, or in immediate proximity to, the room where proceedings are being held before the court; and
 

 (3) Is likely to interrupt or interfere with matters then before the court.
 

 N.C. Gen. Stat. § 5A-13(a)(1)-(3) (2017). In addition, "[t]he presiding judicial official may punish summarily for direct criminal contempt according to the requirements of [ N.C. Gen. Stat. § 5A-14.]"
 

 Id.
 

 § 5A-13(a). The requirements of N.C. Gen. Stat. § 5A-14 for imposing contempt in a summary proceeding are:
 

 (a) The presiding judicial official may summarily impose measures in response to direct criminal contempt when necessary to restore order or maintain the dignity and authority of the court and when the measures are imposed substantially contemporaneously with the contempt.
 

 (b) Before imposing measures under this section, the judicial official must give the person charged with contempt summary notice of the charges and a summary
 
 *400
 
 opportunity to respond and must find facts supporting the summary imposition of measures in response to contempt. The facts must be established beyond a reasonable doubt.
 

 Id.
 

 § 5A-14(a)-(b) (2017).
 

 On 17 April 2018, the trial court entered its Criminal-Contempt Order. In this Order, the trial court found Defendant
 

 after having his probation revoked, he did yell "f*** them, the motherf***ers." He was standing within clear hearing of the Court. This conduct was such that he should have known it to be improper. His conduct was such that there was no excuse for such conduct.
 
 [1]
 

 Below this text, the form normally reads: "The undersigned gave a clear warning that the contemnor's conduct was improper. In addition, the contemnor was given summary notice of the charges and summary opportunity to respond." However, on the form at issue, this language was stricken. As a result of the alleged actions, the trial court sentenced Defendant to 30 days in custody for Criminal Contempt. The trial then entered the Criminal-Contempt Judgment.
 

 State v. Verbal
 
 directs our analysis here.
 
 41 N.C. App. 306
 
 ,
 
 254 S.E.2d 794
 
 (1979). In
 
 Verbal
 
 , the trial court cited the defendant, an attorney, for direct contempt and sentenced him to two days' imprisonment for being late returning from lunch.
 

 Id.
 

 The defendant contended that his alleged behavior was indirect contempt.
 
 Id.
 
 at 307,
 
 254 S.E.2d at 795
 
 . However, we did not reach the question of direct or indirect criminal contempt because we held that the trial court failed to follow the proper procedure set out in
 
 *865
 
 N.C. Gen. Stat. § 5A-14(b), which requires that a contemnor be given an opportunity to be heard.
 

 Id.
 

 We further held that "it is implicit in this statute that the judicial official's findings in a summary contempt proceeding should clearly reflect that the contemnor was given an opportunity to be heard" and without that finding, the trial court's findings do not support the imposition of contempt.
 

 Id.
 

 ;
 
 see also
 

 In re Korfmann
 
 ,
 
 247 N.C. App. 703
 
 , 709,
 
 786 S.E.2d 768
 
 , 771 (2016) (holding that even though the appellant had an opportunity to answer the judge's preliminary questions, the judge failed to give the appellant an opportunity to respond to the charge before imposing it, which required vacatur of the trial court's contempt order);
 
 *401
 

 In re Owens
 
 ,
 
 128 N.C. App. 577
 
 , 581,
 
 496 S.E.2d 592
 
 , 594 (1998) (holding that "the requirements of [ N.C. Gen. Stat. § 5A-14 ] are meant to ensure that the individual has an opportunity to present reasons not to impose a sanction").
 

 In the instant case, there is no record of a summary proceeding taking place or the conduct in question, other than the written Order entered the day after the alleged incident. There also is no evidence that the trial court afforded Defendant the opportunity to respond to the charge or for Defendant to "present reasons not to impose a sanction."
 
 Owens
 
 ,
 
 128 N.C. App. at 581
 
 ,
 
 496 S.E.2d at 594
 
 . The fact the trial court expressly struck the provision of the form Order indicating Defendant was given notice and opportunity to be heard is proof, if anything, Defendant was not offered the opportunity to be heard, and the State points us to no evidence to the contrary.
 

 As such, we conclude the Criminal-Contempt Order was facially deficient. We further conclude the Criminal-Contempt Judgment entered upon that Order is likewise deficient, and we reverse it.
 

 Conclusion
 

 For the foregoing reasons, we vacate the trial court's Order revoking Defendant's probation in the 06 CRS 51521 Judgment. We also reverse the trial court's Criminal-Contempt Order and Criminal-Contempt Judgment in 18 CRS 77. Defendant makes no argument concerning the revocation of probation in the 06 CRS 51515 Judgment; therefore, this Judgment remains effective.
 

 VACATED IN PART, REVERSED IN PART, AFFIRMED IN PART.
 

 Judges DILLON and MURPHY concur.
 

 [1]
 

 We have censored the language used in the original Order.