IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-274

No. COA20-552

Filed 15 June 2021

Watauga County, Nos. 19 CRS 633, 19 CRS 634

STATE OF NORTH CAROLINA

v.

LORI JEAN WARD

Appeal by Defendant from Judgments entered 3 March 2020 by Judge Gary M. Gavenus in Watauga County Superior Court. Heard in the Court of Appeals 24 March 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Nathan D. Childs, for the State.*

*Blass Law, PLLC, by Danielle Blass, for defendant-appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

¶ 1    Lori Jean Ward (Defendant) appeals from Judgments and Commitments Upon Revocation of Probation entered in Watauga County Superior Court revoking her probation and activating sentences arising from two separate criminal cases: one from Lincoln County and one from Catawba County. The Record tends to show the following:

On 29 October 2019, Watauga County Probation Officer Scottie Maltba (Officer Maltba) swore out two Probation Violation Reports against Defendant. Both reports were filed in Watauga County Superior Court on 1 November 2019. The first report, filed in Watauga County file number 19 CRS 633, alleged Defendant had violated terms of a probationary sentence imposed in Lincoln County (the Lincoln County Case) by absconding from probation after being released from custody in Catawba County on 18 September 2019. The second report filed in Watauga County file number 19 CRS 634 alleged Defendant had violated terms of a probationary sentence imposed in Catawba County (the Catawba County Case) by absconding from probation after being released from custody in Catawba County on 18 September 2019. Both Reports reflect Defendant was located in Hickory, North Carolina at the time of the alleged violations.

On 4 February 2020, Defendant, through trial counsel, filed a written Motion to Dismiss alleging the trial court in Watauga County lacked jurisdiction under N.C. Gen. Stat. § 15A-1344 to revoke Defendant's probation in both cases because Defendant was not a resident of Watauga County or the Judicial District in which Watauga County is located, probation had not been imposed in either case in Watauga County or its Judicial District, and Defendant was not alleged to have violated probation in Watauga County or its Judicial District. The matter came on for hearing in Watauga County Superior Court on 10 March 2020. The trial court

first heard Defendant's Motion to Dismiss on jurisdictional grounds and then proceeded to hear evidence on the merits of the violation reports. Officer Maltba was the only witness to testify. He testified both during the preliminary hearing of the Motion to Dismiss and the hearing on Defendant's alleged probation violations.

¶ 4        Officer Maltba's testimony over the course of the two phases establishes that on 14 June 2019, Defendant was convicted, in a case unrelated to this appeal, of Misdemeanor Larceny in Watauga County and placed on probation (the Watauga County Case). The same day, Defendant submitted a request to the Judicial Services Coordinator, who conducted the probation intake, that her probation be supervised in Catawba County. At the time, Defendant was in custody—it appears in Catawba County[1]—awaiting trial on the pending charges in the Catawba and Lincoln County Cases. Defendant informed the Judicial Services Coordinator that, after being released from custody, Defendant intended to live in Catawba County at the Salvation Army Center, which served as a homeless shelter. Defendant further advised she eventually intended to live with her sister in Newton, Catawba County and provided her mother's phone number as contact information. The Judicial Services Coordinator provided Defendant reporting instructions for Catawba County

---

[1] The record is not expressly clear as to where Defendant was in custody at this time, but it is a fair inference from the Record custody was in Catawba County. The State, without record support, asserts Defendant was in custody in Watauga County. Defendant claims she was in custody in Catawba County at the time.

and told Defendant to report to the Catawba County probation office within three days pending her release from custody.

¶ 5    On 25 June 2019, unbeknownst at the time to Defendant, the Chief Probation Officer in Catawba County provided a narrative report declining to accept supervision of Defendant's probation in the Watauga County Case on the basis the address Defendant provided was not a valid living address because it was a "homeless address" and that Defendant presently remained in custody. Consequently, Officer Maltba, in Watauga County, was assigned to monitor Defendant's probation in the Watauga County Case. Officer Maltba did not meet with Defendant but testified he simply monitored where Defendant was because she remained in custody.

¶ 6    Subsequently, on 10 July 2019, Defendant entered a plea arrangement in the Lincoln County Case. Defendant agreed to plead guilty to one count of Felony Possession of Heroin. In exchange, the State agreed to dismiss a second charge of Possession of Drug Paraphernalia. The written plea arrangement further stated: "Defendant's probation shall be transferred to Catawba County + she shall comply with drug treatment court." The trial court in Lincoln County accepted the plea and ordered it recorded. The same day, the Lincoln County trial court entered Judgment sentencing Defendant to a term of five-to-fifteen months imprisonment suspended upon completion of fifteen months of probation with the additional special probation requirement Defendant serve fifty days in custody. The Judgment in the Lincoln

County Case further provided as a special condition of probation: "[m]ay transfer to CATAWBA County for supervision." According to Officer Maltba's testimony, a narrative report from Lincoln County dated 11 July 2019 indicated the Lincoln County Judicial Service Coordinator (Lincoln County JSC) informed Defendant of the conditions of supervised probation and instructed Defendant to contact the Lincoln County JSC within one day of Defendant's release from custody. The narrative report further noted Defendant was currently on probation with Officer Maltba in Watauga County.

¶ 7   Then, on 19 July 2019, Defendant entered an *Alford* plea to one count of Felony Larceny and one count of Misdemeanor Larceny in the Catawba County Case. In exchange for the *Alford* plea, the State agreed to consolidate the charges and that Defendant would receive an intermediate sentence in the presumptive range. The trial court in Catawba County accepted the plea and ordered it recorded. The same day, the Catawba County trial court entered Judgment sentencing Defendant to a term of ten-to-twenty-one months imprisonment, suspended upon completion of twenty-four months of supervised probation, with the Special Probation requirement consistent with an intermediate punishment Defendant serve an active term of sixty days in custody of the Catawba County Sheriff. Also on 19 July 2019, a Catawba County Probation Officer conducted an intake interview with Defendant. According to Officer Maltba, the narrative report entered by that Catawba County Probation

Officer stated "[D]efendant advised him that she was going to live at the Salvation Army and maybe Black Mountain." Defendant also apparently advised the Catawba County Probation Officer her probation in the Watauga County Case was supposed to be transferred to Catawba County. It was only then Defendant was informed the transmittal of her probation to Catawba County had been denied, and the Catawba County Probation Officer "advised her to call [Officer] Maltba in Watauga County upon her release."

On 4 August 2019, Defendant was released from custody. On 30 September 2019, Officer Maltba conducted a "records check" on Defendant, which showed Defendant had been charged with a new crime in Catawba County on 18 September 2019 and been released on bond the same day. Having not heard from Defendant, Officer Maltba "began to investigate as to why . . . [D]efendant hadn't reported."

Having failed to locate Defendant, Officer Maltba filed the two Probation Violation Reports, dated 1 November 2019, in Watauga County Superior Court, alleging Defendant had absconded and failed to report as directed in her Lincoln and Catawba County cases. On the Record before us, there is no report Defendant violated probation in the Watauga County Case. Officer Maltba testified Defendant was "picked up" on 17 December 2019 in Catawba County, and on 30 December 2019 she was transferred to Watauga County, where Officer Maltba served her with the Probation Violation Reports; this was the first time Officer Maltba met with

Defendant in-person since being assigned to her six months prior.

¶ 10     At the hearing on Defendant's Motion to Dismiss, Officer Maltba testified policies issued by the North Carolina Department of Public Safety required, when a probationer is on probation in one county, that any subsequent probationary sentence entered in another county be assigned to be supervised by the same probation officer in the first county as a "subsequent case." Thus, here, Officer Maltba explained he was automatically assigned to supervise Defendant's probation in the Lincoln and Catawba County Cases because he was already supervising probation in the Watauga County Case. Officer Maltba, however, also testified the same policies required:

> Offenders must be supervised in the county of residence. If at the time the sentencing offender resides in a county other than the county of conviction, the case must be, upon completion of a[n] intake interview, be transmitted to that county of residence. The county of residence must accept the case unless it shows that the offender does not live there and that the intake officer will give the defendant reporting instructions to the Chief Probation and Parole Officer of the county of residence within three calendar days.

Officer Maltba conceded there was no evidence Defendant resided in Watauga County. Indeed, the Record, including charging documents in both the Lincoln and Catawba County Cases, the two Probation Violation Reports, and an Affidavit of Indigency filed by Defendant prior to hearing, reflects the only actual addresses, locations, or places of residence given for Defendant were in Catawba County.

¶ 11     At the conclusion of the hearing on the Motion to Dismiss, the trial court denied

Defendant's motion on the basis: "her probation violations, as alleged in the violation report, occurred in Watauga County because she absconded by making her whereabouts unknown to this probation officer and avoided supervision of this probation officer in Watauga County." The trial court proceeded to arraign Defendant on the probation violations and heard further testimony from Officer Maltba on Defendant's alleged absconding from probation. At the conclusion of the hearing, Defendant, through counsel, renewed her jurisdictional objection and further moved to dismiss on the basis the State had failed to produce sufficient evidence of probation violations to support revocation of probation. The trial court denied these motions, found Defendant in violation of her probation in both the Lincoln County Case and Catawba County Case, revoked probation in both cases, and activated both sentences with the sentence in the Catawba County Case (19 CRS 634) to run consecutively after the sentence in the Lincoln County Case (19 CRS 633). The trial court entered written Judgments the same day: 10 March 2020. Defendant timely filed written Notice of Appeal on 17 March 2020.

## Issue

¶ 12    The dispositive issue on appeal is whether Defendant's alleged probation violations in the Lincoln County Case and Catawba County Case occurred in Watauga County for purposes of establishing the Watauga County trial court's jurisdiction to revoke Defendant's probation in both cases pursuant to N.C. Gen. Stat.

§ 15A-1344(a).

## Standard of Review

"[T]he issue of a court's jurisdiction over a matter may be raised at any time, even for the first time on appeal or by a court *sua sponte*." "It is well settled that a court's jurisdiction to review a probationer's compliance with the terms of his probation is limited by statute." "[A]n appellate court necessarily conducts a statutory analysis when analyzing whether a trial court has subject matter jurisdiction in a probation revocation hearing, and thus conducts a *de novo* review." "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal."

*State v. Tincher*, 266 N.C. App. 393, 395, 831 S.E.2d 859, 861-62 (2019) (alterations in original) (citations omitted).

¶ 13 "The State bears the burden in criminal matters of demonstrating beyond a reasonable doubt that a trial court has subject matter jurisdiction." *State v. Williams*, 230 N.C. App. 590, 595, 754 S.E.2d 826, 829 (2013) (lack of jurisdiction to revoke probation). " 'When the record shows a lack of jurisdiction in the lower court, the appropriate action on the part of the appellate court is to arrest judgment or vacate any order entered without authority.' " *Id.* (quoting *State v. Felmet*, 302 N.C. 173, 176, 273 S.E.2d 708, 711 (1981)).

## Analysis

¶ 14 N.C. Gen. Stat. § 15A-1344 governs the authority of trial courts to alter or revoke probation in response to violations. N.C. Gen. Stat. § 15A-1344 (2019).

Relevant to this case, Section 15A-1344(a) provides:

> probation may be reduced, terminated, continued, extended, modified, or *revoked* by any judge entitled to sit in the court which imposed probation and who is resident or presiding in the district court district as defined in G.S. 7A-133 or superior court district or set of districts as defined in G.S. 7A-41.1, as the case may be, *where the sentence of probation was imposed, where the probationer violates probation, or where the probationer resides.*

N.C. Gen. Stat. § 15A-1344(a) (2019) (emphasis added).  Here, Defendant contends the trial court erred in denying her Motion to Dismiss for lack of subject-matter jurisdiction, arguing the State presented insufficient evidence to establish: Defendant's probation in the Lincoln and Catawba County Cases was imposed in Watauga County; Defendant violated probation in the Lincoln and Catawba County Cases in Watauga County; or Defendant resided in Watauga County.  The State effectively concedes the evidence does not support a determination probation in the Lincoln County Case or the Catawba County Case was imposed in Watauga County and, further, that there is no evidence Defendant was a resident of Watauga County. In addition, there is no argument Watauga County is in the same judicial district or set of districts as either Lincoln or Catawba Counties.[2]  Rather, consistent with the trial court's ruling, the State solely argues Defendant violated the terms of her probation in the Lincoln and Catawba County Cases in Watauga County because

---

[2] Catawba County is in District 25B.  Lincoln County is in District 27B.  Watauga County is in District 24.  N.C. Gen. Stat. § 7A-41(a) (2019).

those cases had been administratively assigned to Officer Maltba for supervision in Watauga County; thus, the State contends Defendant's failure to report to Officer Maltba for supervision in Watauga County constituted absconding from probation in Watauga County.

### *The Lincoln County Case*

¶ 15        As an initial matter, Officer Maltba's Probation Violation Report filed in the Lincoln County Case (19 CRS 633) does not expressly allege Defendant absconded from probation in Watauga County.   Moreover, the terms of Defendant's plea arrangement in the Lincoln County Case specifically included: "Defendant's probation shall be transferred to Catawba County . . . ."  The State, however, contends because the Judgment entered by the Lincoln County trial court includes as a special condition that probation "[m]ay transfer to CATAWBA County for supervision[,]" it converted the plea arrangement such that any transfer became a "permissive" term of the plea arrangement and the State was not required to transfer Defendant's probation in the Lincoln County Case to Catawba County.  Thus, the State essentially posits, it was not required to abide by its own representation to a Superior Court Judge of an express term in a written plea arrangement with Defendant that was accepted by that Superior Court Judge.

¶ 16        "A plea agreement is treated as contractual in nature, and the parties are bound by its terms."  *State v. Russell*, 153 N.C. App. 508, 509, 570 S.E.2d 245, 247

(2002) (citation omitted). "Normally, plea agreements are in the form of unilateral contracts and the 'consideration given for the prosecutor's promise is not defendant's corresponding promise to plead guilty, but rather is defendant's actual performance by so pleading.'" *State v. King*, 218 N.C. App. 384, 388, 721 S.E.2d 327, 330 (2012) (quoting *State v. Collins*, 300 N.C. 142, 149, 265 S.E.2d 172, 176 (1980)). "Once defendant begins performance of the contract 'by pleading guilty or takes other action constituting detrimental reliance upon the agreement[,]' the prosecutor can no longer rescind his offer." *Id.* (alteration in original) (quoting *Collins*, 300 N.C. at 149, 265 S.E.2d at 176). "Due process requires strict adherence to a plea agreement and 'this strict adherence requires holding the State to a greater degree of responsibility than the defendant . . . for imprecisions or ambiguities in plea agreements.'" *Id.* (alteration in original) (quoting *State v. Blackwell*, 135 N.C. App. 729, 731, 522 S.E.2d 313, 315 (1999)).

¶ 17     Here, once Defendant entered her guilty plea in the Lincoln County Case, the State was bound by the unambiguous terms of its plea arrangement with Defendant to transfer the probationary aspect of Defendant's split sentence to Catawba County. *See id.* Indeed, the trial court's statement in the actual Judgment that probation "[m]ay transfer to CATAWBA County for supervision" cannot, in this context, reasonably be construed as granting the State unilateral authority to decide whether to transfer supervision to Catawba County. *See id.* Rather, in light of the plea

arrangement in the Lincoln County Case, the trial court's use of the term "may" can only be construed as a grant of authority or judicial authorization to the State for purposes of implementing the mandatory provision of the plea agreement to transfer Defendant's probation in the Lincoln County Case to Catawba County. *Cf. Jones v. Madison Cnty. Comm'rs,* 137 N.C. 579, 591 50 S.E. 291, 295 (1905) (citing Black, Henry Campbell, *Handbook on the Construction and Interpretation of the Laws*, West Publishing Co. (1896)) (recognizing use of generally permissive terms in a statute "will be construed as mandatory, and the execution of the power may be insisted upon as a duty" where it "provides for the doing of some act which is required by justice or public duty, as where it invests a public body, municipality, or officer with power and authority to take some action which concerns the public interests or the rights of individuals" and referencing cases "in which the term 'may' and 'authorized and empowered' and 'authorized' are respectively held to be imperative").

¶ 18        The State also argues the plea arrangement in the Lincoln County Case could not impose a condition of probation changing statutory venue for Defendant's probation. The State, however, fails to offer any support for its assertion, let alone identify any particular statute. Moreover, N.C. Gen. Stat. § 15A-1343(a) provides: "The court may impose conditions of probation reasonably necessary to insure that the defendant will lead a law-abiding life or to assist him to do so." N.C. Gen. Stat. § 15A-1343(a) (2019); *see also* § 15A-1343(b)(2-3) ("As regular conditions of probation,

a defendant must: . . . Remain within the jurisdiction of the court unless granted written permission to leave by the court or his probation officer. Report as directed by the court or his probation officer . . . ." ). Indeed, the statute further provides the following:

> Regular conditions of probation apply to each defendant placed on supervised probation *unless the presiding judge specifically exempts the defendant from one or more of the conditions in open court and in the judgment of the court.* It is not necessary for the presiding judge to state each regular condition of probation in open court, but the conditions must be set forth in the judgment of the court.

§ 15A-1343 (emphasis added).

¶ 19        In any event, even if the provision of the plea arrangement was not enforceable, the State has failed to offer any legal basis for probation to be supervised in Watauga County for a probationary sentence imposed in Lincoln County in the absence of evidence Defendant was resident in Watauga County or even located in Watauga County when she allegedly absconded. Thus, the State failed to meet its burden to show Defendant was properly being supervised on probation in Watauga County resulting from the Lincoln County Case such that any absconding from probation occurred in Watauga County. Therefore, the trial court lacked jurisdiction to revoke Defendant's probation in Watauga County. Consequently, we vacate the trial court's Judgment revoking Defendant's probation in the Lincoln County Case (Watauga County file number 19 CRS 633).

<u>*The Catawba County Case*</u>

¶ 20    Defendant further contends the Watauga County trial court erred in determining it had jurisdiction to revoke probation for the Catawba County Case on the basis Defendant absconded from probation in Watauga County. Specifically, Defendant argues the State's own evidence showed Department of Public Safety policies required probation to be supervised in the county of the probationer's residence and Officer Maltba conceded in his testimony there was no evidence Defendant resided in Watauga County. Again, there is no express allegation in the violation report filed with respect to the Catawba County Case that Defendant absconded from probation in Watauga County. Further, the materials in the Record have a tendency to reflect Defendant was, in fact, resident in Catawba County at all times relevant to this appeal.

¶ 21    The State, nevertheless, contends this case is analogous to our decision in *State v. Regan*, 253 N.C. App. 351, 800 S.E.2d 436 (2017), *overruled on other grounds by State v. Morgan*, 372 N.C. 609, 831 S.E.2d 254 (2019), in that Defendant was on probationary sentences originating from multiple jurisdictions and Officer Maltba was simply trying to coordinate the three different probationary sentences in Watauga County. *Regan* is, however, inapposite.

¶ 22    In *Regan*, the defendant was put on probation in Harnett County. *Id.* at 352, 800 S.E.2d at 437. Subsequently, the defendant was placed on probation for a

conviction in Sampson County. *Id.* The Sampson County probation was assigned to

the same Harnett County probation officer. *Id.* The defendant absconded and her

probation was subsequently revoked by a Harnett County Superior Court. *Id.* at 353,

800 S.E.2d at 438. On appeal, the defendant "argue[d] that the trial court in Harnett

County lacked subject matter jurisdiction to commence a probation revocation

hearing because the probation originated in Sampson County." *Id.* at 352, 800 S.E.2d

at 437. Specifically, the defendant claimed:

> the State did not meet its burden of showing that 1) the Sampson
> County probation was transferred to Harnett County Superior
> Court and the Harnett County Superior Court thereafter issued
> its own probation order authorizing supervision of Defendant; 2)
> Defendant violated her probation in Harnett County; or 3)
> Defendant resided in Harnett County at the time of the violations.

*Id.* at 355, 800 S.E.2d at 438-39. However, this Court concluded:

> Defendant's argument [wa]s refuted by evidence that at the time
> she violated her probation by failing to pay supervision fees and
> by leaving the state, her residence was in Harnett County.
> Defendant's argument also [wa]s refuted by evidence that she
> violated her probation by failing to report for an appointment
> with her probation officer in Harnett County, thus vesting
> Harnett County Superior Court with jurisdiction to revoke
> Defendant's probation.

*Id.* at 355, 800 S.E.2d at 439. Our Court further pointed out:

> the trial court also could have found as a fact, based on a
> reasonable inference from the evidence, that Defendant violated
> the terms of her probation in Harnett County when she failed to
> meet with Officer Wiley on 5 April 2011 . . . . By failing to appear
> for her appointment with Officer Wiley of the Harnett County

> Probation Office, Defendant committed a probation violation in
> Harnett County.

*Id.*

Thus, in that case, Defendant was a resident of Harnett County and absconded from Harnett County, including failing to keep appointments in Harnett County. *See id.* Here, however, there is, again, no evidence Defendant was a resident of Watauga County and no evidence Defendant, in fact, absconded from Watauga County or missed any scheduled appointments in Watauga County. Indeed, here, unlike in *Regan*, there never was any supervisory contact between Defendant and Officer Maltba in Watauga County—in fact, Officer Maltba would not meet Defendant until presenting her with the probation violations reports in December 2019.

The State argues Defendant was informed during the intake processes for both the Lincoln and Catawba County Cases she was being supervised on probation in Watauga County—and, thus, was required to report to Officer Maltba upon her release from custody in Catawba County. However, Officer Maltba's testimony actually only reflects that the narrative summary from Lincoln County stated the Lincoln County JSC told Defendant she was still on probation in the Watauga County Case.[3] Similarly, the narrative summary from the Catawba County Probation Officer

---

[3] Officer Maltba speculated in his testimony that the Lincoln County JSC's instruction to Defendant to contact her within a day of Defendant's release was for the purpose of providing Defendant with Officer Maltba's contact information. This does not appear on the

reflects Defendant was simply told her request to transfer probation in the Watauga County Case to Catawba County had been denied and she should contact Officer Maltba once she was released from custody in Catawba County. Again, however, and unlike *Regan*, Defendant was never alleged to be in violation of her probation in the Watauga County Case by failing to report to Officer Maltba.

¶ 25        As with the Lincoln County Case, the State has failed to provide any basis for asserting Defendant's probation in the Catawba County Case was properly supervised in Watauga County. This is particularly so where the State's own evidence revealed Department of Public Safety Policy required the probationer to be supervised in the county of her residence, there was no evidence Defendant resided in Watauga County, and every indication in the Record is that Defendant resided in Catawba County. Thus, the State failed to meet its burden to show Defendant was properly being supervised on probation in Watauga County resulting from the Catawba County Case such that any absconding from probation occurred in Watauga County. Therefore, the trial court lacked jurisdiction to revoke Defendant's probation in Watauga County. Consequently, we vacate the trial court's Judgment revoking Defendant's probation in the Catawba County Case (Watauga County file number 19 CRS 634).

---

face of Officer Maltba's recitation of the narrative report and would be in conflict with the express terms of Defendant's plea agreement.

## <u>Conclusion</u>

Accordingly, for the foregoing reasons, we vacate the trial court's Judgments revoking Defendant's probation in both Watauga County file numbers 19 CRS 633 and 19 CRS 634.

VACATED.

Judges ARROWOOD and CARPENTER concur.