CALABRIA, Judge.
 

 *810
 
 Clarence Joseph Trent ("defendant") appeals from judgments revoking his probation and activating his suspended sentences. After careful review, we affirm the trial court's judgments but remand for correction of clerical errors.
 

 I. Background
 

 On 10 March 2016 in Guilford County Superior Court, defendant pleaded guilty to two counts of obtaining property by false pretenses (15 CRS 80278-79) and two counts of conspiring to obtain property by false pretenses (15 CRS 81150-51). The trial court consolidated 15 CRS 80278 and 15 CRS 81150 into one judgment, and 15 CRS 80279 and 15 CRS 81151 into another. The court sentenced defendant to serve two consecutive terms of 8 to 19 months in the custody of the North Carolina Division of Adult Correction. The trial court suspended both sentences, placed defendant on 36 months of supervised probation, and ordered him to serve a 30-day active term as a condition of special probation in 15 CRS 80278. Defendant's probation supervision was transferred to Randolph County.
 

 *811
 
 On 18 March 2016, defendant met with his new supervising officer ("Officer Russell") to review the conditions of his probation. Defendant told Officer Russell that he and his wife ("Kim") were in the process of being evicted from their residence at 3550 Holly Ridge Drive in Trinity. Officer Russell instructed defendant to provide an update whenever his address changed. When defendant next met with Officer Russell on 12 April 2016, he provided his new address as 150 U.S. Highway 311, Lot 9 in Randleman. At the conclusion of the meeting, Officer Russell scheduled defendant's next appointment for 9 May 2016.
 

 On 24 April 2016, Officer Russell made an unannounced visit to defendant's home in Randleman. Defendant was not home, and Kim was "very upset." Kim told Officer Russell that she had not seen defendant since the previous day, when he took her car and bank card without permission and left the residence. Kim also told Officer Russell that it was defendant's "normal pattern ... to go out and be gone for days on drugs." Officer Russell informed Kim that if defendant did not come home within a few days, she would consider him to be absconding. When Officer Russell revisited the residence on 5 May 2016, Kim said that defendant still had not returned, and she did not know where he was.
 

 On 9 May 2016, Officer Russell filed reports in both cases alleging that defendant had committed the following willful violations of his probation
 
 [1]
 
 :
 

 1. Regular Condition of Probation: "Not to abscond, by willfully avoiding supervision or by willfully making the supervisee's whereabouts unknown to the supervising probation officer" in that,
 

 THE DEFENDANT LEFT HIS RESIDENCE AT 150 US HWY 311, LOT 9, RANDLEMAN ON OR ABOUT 04/23/2016, AFTER TAKING HIS WIFE'S CAR AND BANK CARD AND HAS FAILED TO RETURN TO THE RESIDENCE SINCE THAT TIME. HIS WHEREABOUTS ARE UNKNOWN.
 

 2. Condition of Probation "... obtain prior approval from the officer for, and notify the officer of, any change in address ..." in that
 

 THE DEFENDANT HAS FAILED TO NOTIFY HIS PROBATION OFFICER OF ANY CHANGE IN ADDRESS AND
 

 *227
 
 DID NOT HAVE PERMISSION TO MOVE.
 

 *812
 
 Defendant did not appear for his scheduled appointment with Officer Russell that afternoon. On 10 May 2016, Officer Russell learned that defendant had been arrested in Guilford County the previous day. Defendant was subsequently transferred to the Randolph County jail, where he remained in custody until his probation violation hearing on 6 June 2016.
 

 At the hearing, Officer Russell testified for the State and recommended that the trial court revoke defendant's probation. After the State presented evidence, defendant testified that during Officer Russell's unscheduled visits to his residence, he was working in Raleigh on an eight-day painting job. According to defendant's testimony, Kim agreed to inform Officer Russell that he was away. However, when defendant returned home on 6 or 7 May 2016, he discovered that Kim had been "lying" to Officer Russell and "was trying to get [him] locked up" because she was having an affair. During cross-examination by the State, defendant admitted that despite knowing that Officer Russell had visited his residence while he was away, he did not contact her at any time after he returned from Raleigh.
 

 At the hearing's conclusion, the trial court found that the State had proven that defendant absconded from supervision, but not that he failed to notify Officer Russell of a change to his address. Based on its finding that defendant willfully absconded from supervision, the court revoked defendant's probation and activated both of his suspended sentences. Defendant appeals.
 

 II. Analysis
 

 On appeal, defendant contends the trial court erred in revoking his probation based on its finding that he willfully absconded from supervision. We disagree.
 

 A. Standard of Review
 

 A hearing to revoke a defendant's probationary sentence only requires that the evidence be such as to reasonably satisfy the judge in the exercise of his sound discretion that the defendant has willfully violated a valid condition of probation or that the defendant has violated without lawful excuse a valid condition upon which the sentence was suspended.
 

 State v. Young
 
 ,
 
 190 N.C. App. 458
 
 , 459,
 
 660 S.E.2d 574
 
 , 576 (2008) (citation and quotation marks omitted). "[O]nce the State has presented competent evidence establishing a defendant's failure to comply with
 
 *813
 
 the terms of probation, the burden is on the defendant to demonstrate through competent evidence an inability to comply with the terms."
 
 State v. Talbert
 
 ,
 
 221 N.C. App. 650
 
 , 652,
 
 727 S.E.2d 908
 
 , 910-11 (2012) (citation and quotation marks omitted).
 

 We review the trial court's decision to revoke a defendant's probation for abuse of discretion.
 
 State v. Murchison
 
 ,
 
 367 N.C. 461
 
 , 464,
 
 758 S.E.2d 356
 
 , 358 (2014). "Abuse of discretion occurs when a ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision."
 

 Id.
 

 (citation, quotation marks, and brackets omitted).
 

 B. Probation Revocation
 

 N.C. Gen. Stat. § 15A-1343(b) (2015) provides the regular conditions of probation which "apply to each defendant placed on supervised probation unless the presiding judge specifically exempts the defendant from one or more of the conditions in open court and in the judgment of the court."
 
 E.g.
 
 , N.C. Gen. Stat. §§ 15A-1343(b)(2), (4), (7) (requiring a probationer to: "[r]emain within the jurisdiction of the court unless granted written permission to leave"; "[s]atisfy child support and other family obligations"; and "[r]emain gainfully and suitably employed or faithfully pursue a course of study or of vocational training").
 

 Violations of these statutory conditions can have various consequences.
 
 See
 
 N.C. Gen. Stat. § 15A-1344(a) (stating that "probation may be reduced, terminated, continued, extended, modified, or revoked"). However, the trial court is only authorized to revoke probation under circumstances where the defendant: (1) commits a new criminal offense, in violation of N.C. Gen. Stat. § 15A-1343(b)(1) ; (2) absconds "by willfully avoiding supervision or by willfully making the defendant's
 
 *228
 
 whereabouts unknown to the supervising probation officer," in violation of N.C. Gen. Stat. § 15A-1343(b)(3a) ; or (3) violates any condition of probation after previously serving two periods of confinement in response to violations, pursuant to N.C. Gen. Stat. § 15A-1344(d2). N.C. Gen. Stat. § 15A-1344(a). For all other violations, the trial court may either modify the conditions of the defendant's probation or impose a 90-day period of imprisonment pursuant to N.C. Gen. Stat. § 15A-1344(d2).
 

 Id.
 

 In the instant case, the State alleged violations of N.C. Gen. Stat. §§ 15A-1343(b)(3) and 15A-1343(b)(3a).
 
 See
 
 N.C. Gen. Stat. § 15A-1343(b)(3) (providing that a defendant must,
 
 inter alia
 
 , "obtain prior approval from the [supervising] officer for, and notify the officer of, any change in address or employment"). At the hearing, before delivering its ultimate
 
 *814
 
 findings, the trial court offered a recitation of the evidence presented by both parties:
 

 THE COURT: Upon reviewing my notes concerning the evidence that has been received, I'm ready at this time to address the two allegations that have been lodged against the probationer. The first allegation as to probation violation is that the defendant absconded his probation by willfully avoiding supervision or by willfully making his whereabouts unknown to the supervising probation officer in that defendant left his residence at 150 U.S. Highway 311, Lot 9, Randleman, on or about 4-23-2016, that's April 23, 2016, after taking his wife's car and bank card and has failed to return to the residence since that time. His whereabouts are unknown.
 

 The evidence of the State on that allegation is that, in terms of what is salient at least for this determination, that on March 18, 2016 the probationer reported for his first visit with the probation officer. On April 16, 2016, he reported again to the probation officer saying that he was going to be moving to another address, and another appointment was set for May 9th, 2016, which the probationer did not keep.
 

 Along the way on April 24, 2016 an unannounced visit was made by the probation officer to the residence at which the probationer was expected to be. Probation officer talked to the wife. The probationer was not there. The wife was upset because the probationer had, according to the wife, taken her car and left. On May 5, 2016, a Thursday, probation officer again went to the residence at which probationer was supposed to be. Probationer was not there. Probation officer talked to the wife and was told that the probationer had not returned to the home. The probation officer found that on May 10, 2016 that the probationer was incarcerated.
 

 On those pertinent issues the probationer has testified that he needed money and his brother-in-law offered him some work. The wife told the probationer to go ahead and go to work and that she would tell the probation officer that the probationer was at work. It's the probationer's understanding that his wife was having an affair. He went
 
 *815
 
 to his mother's home for a couple days but did not contact his probation officer to say where he was and that, if it wasn't for the domestic squabble between him and his wife concerning a vehicle, that this whole probation violation matter would not even be occurring.
 

 I do find that the State by the appropriate standard of evidence has proven the existence of the first allegation of probation violation in that he failed to be at the residence at the time that he was to be there. As a result, that has been proven.
 

 On the second allegation of probation violation the allegation is that the defendant had failed to notify his probation officer of any change in address and did not have permission to move. The pertinent dates upon which the probation officer has made that determination for the probation violation report are the unannounced visits of April 24, 2016 and May 5, 2016, a period of a couple of weeks. The court does not find that a two-week absence is sufficient at least in this case to equate to a change in address or a move especially in light of the probationer's testimony that he still had items of value at the residence including his clothing and pet or some animal dear to him.
 

 *229
 
 So I do not find that allegation No. 2 has been proven by the appropriate standard of evidence, but I do find that, as to the absconding in allegation 1, that has been proven.
 

 1.
 
 Standard of Proof
 

 Defendant first argues that the trial court abused its discretion by making its oral findings of fact without explicitly stating the legal standard of proof, as demonstrated by the following statement:
 

 THE COURT: I do find that the State by the appropriate standard of evidence has proven the existence of the first allegation of probation violation in that he failed to be at the residence at the time that he was to be there. As a result, that has been proven.
 

 This Court has held that a trial court's failure to state the standard of proof underlying its findings may constitute reversible error where certain protected interests are involved.
 
 See, e.g.
 
 ,
 
 State v. Phillips
 
 ,
 
 230 N.C. App. 382
 
 , 386,
 
 750 S.E.2d 43
 
 , 46 (2013) (holding that "the trial court's failure to indicate that he applied 'beyond a reasonable doubt' as the
 
 *816
 
 standard of proof in finding facts" rendered the criminal contempt order fatally deficient, because N.C. Gen. Stat. § 5A-15(f) specifically instructs that "[t]he facts must be established beyond a reasonable doubt"),
 
 disc. review improvidently allowed
 
 ,
 
 367 N.C. 715
 
 ,
 
 766 S.E.2d 340
 
 (2014). However, we have never held so in the context of a probation hearing, and we decline to do so now.
 

 A probation revocation proceeding "is not a criminal prosecution and is often regarded as informal or summary."
 
 Murchison
 
 , 367 N.C. at 464,
 
 758 S.E.2d at 358
 
 (citation and quotation marks omitted). "The Supreme Court of the United States has observed that revocation of probation 'deprives an individual ... only of the conditional liberty' dependent on the conditions of probation."
 

 Id.
 

 at 463
 
 ,
 
 758 S.E.2d at 358
 
 (quoting
 
 Gagnon v. Scarpelli
 
 ,
 
 411 U.S. 778
 
 , 781,
 
 93 S.Ct. 1756
 
 , 1759,
 
 36 L.Ed.2d 656
 
 , 661 (1973),
 
 superseded by statute
 
 , Parole Commission and Reorganization Act, Pub. L. No. 94-233,
 
 90 Stat. 228
 
 (1976) ). Furthermore, "the alleged violation of a valid condition of probation need not be proven beyond a reasonable doubt."
 
 Id.
 
 at 464,
 
 758 S.E.2d at 358
 
 (citation and quotation marks omitted). Rather, all that is required is "that the evidence be such as to reasonably satisfy the judge in the exercise of his sound discretion that the defendant has willfully violated a valid condition of probation...."
 
 Young
 
 ,
 
 190 N.C. App. at 459
 
 ,
 
 660 S.E.2d at 576
 
 .
 

 Although the trial court failed to employ the best practice and explicitly state the legal standard of proof, the totality of the court's statements indicate that the court was "reasonably satisfied," in light of all of the evidence presented, that defendant had willfully violated N.C. Gen. Stat. § 15A-1343(b)(3a), but not § 15A-1343(b)(3).
 

 Id.
 

 Accordingly, we conclude that the trial court's oral finding did not constitute an abuse of discretion.
 

 2.
 
 Absconding
 

 Defendant next argues that the trial court's finding that "he failed to be at the residence at the time that he was to be there" does not support that he willfully absconded from supervision. Specifically, defendant contends, "there was no evidence presented that [he] was required to be at home during [Officer Russell's] two unscheduled visits." However, the State was not required to present such evidence. As a regular condition of probation, defendant consented to unannounced visits from his supervising officer.
 
 See
 
 N.C. Gen. Stat. § 15A-1343(b)(3) (requiring a defendant to "[r]eport as directed by the court or his probation officer to the officer at reasonable times and places and in a reasonable manner,
 
 permit the officer to visit him at reasonable times
 
 , answer all
 
 *817
 
 reasonable inquiries by the officer and obtain prior approval from the officer for, and notify the officer of, any change in address or employment" (emphasis added)).
 

 Defendant is correct that his probation could not be revoked based on a violation of this condition alone.
 
 See
 
 N.C. Gen. Stat. § 15A-1344(a). Nevertheless, in relying on our decisions in
 
 State v. Johnson
 
 , --- N.C. App. ----,
 
 783 S.E.2d 21
 
 (2016) and
 
 State v. Williams
 
 , --- N.C. App. ----,
 
 776 S.E.2d 741
 
 (2015), defendant overlooks key facts
 
 *230
 
 that distinguish those cases from the instant case.
 

 In
 
 State v. Johnson
 
 , the defendant told his probation officer that he would be unable to attend their appointment the following morning because he did not have a car or a ride. --- N.C. App. at ----,
 
 783 S.E.2d at 23
 
 . He asked whether they might reschedule for later that day, but the officer declined his request.
 

 Id.
 

 After the defendant failed to attend his appointment, the officer filed violation reports for absconding, and the trial court subsequently revoked his probation.
 

 Id.
 

 On appeal, we determined that the defendant's "actions, while clearly a violation of N.C. Gen. Stat. § 15A-1343(b)(3), ... do not rise to 'absconding supervision' in violation of N.C. Gen. Stat. § 15A-1343(b)(3a)."
 

 Id.
 

 at ----,
 
 783 S.E.2d at 25
 
 . We explained that
 

 a defendant informing his probation officer he would not attend an office visit the following day and then subsequently failing to report for the visit, does not, without more, violate N.C. Gen. Stat. § 15A-1343(b)(3a) when these
 
 exact actions
 
 violate the explicit language of a wholly separate regular condition of probation which does not allow for revocation and activation of a suspended sentence.
 

 To hold otherwise would render portions of N.C. Gen. Stat. § 15A-1344(a) superfluous. Allowing actions which explicitly violate a regular or special condition of probation other than those found in N.C. Gen. Stat. § 15A-1343(b)(1) or N.C. Gen. Stat. § 15A-1343(b)(3a) to also serve, without the State showing more, as a violation of N.C. Gen. Stat. § 15A-1343(b)(1) or N.C. Gen. Stat. § 15A-1343(b)(3a) would result in revocation of probation without following the mechanism the General Assembly expressly provided in N.C. Gen. Stat. § 15A-1344(d2).
 

 Id.
 

 at ----,
 
 783 S.E.2d at 26
 
 (internal citations omitted). Furthermore, because the defendant had also been ordered to submit to house arrest with electronic monitoring as a special condition of probation,
 
 id="p818" href="#p818" data-label="818" data-citation-index="1" class="page-label">*818
 

 id.
 
 at ----,
 
 783 S.E.2d at 22
 
 , his supervising officer "was able to monitor and keep continuous track of [his] locations and movements through the use of the electronic monitoring device [he] wore."
 

 Id.
 

 at ----,
 
 783 S.E.2d at 27
 
 . Therefore, the defendant's whereabouts were never unknown to his probation officer.
 

 Id.
 

 Similarly, in
 
 State v. Williams
 
 , the probation officer alleged that the defendant had violated seven conditions of his probation, including N.C. Gen. Stat. § 15A-1343(b)(3a). --- N.C. App. at ----,
 
 776 S.E.2d at 742
 
 . At the violation hearing, the State presented evidence that the defendant had missed multiple scheduled appointments with his supervising officer; was traveling "back and forth from North Carolina to New Jersey" without permission; and had "never really lived" at his reported address.
 

 Id.
 

 The trial court found each violation alleged and revoked the defendant's probation.
 

 Id.
 

 On appeal, we explained that "[a]lthough the report alleged that [the d]efendant's actions constituted 'absconding supervision,' this wording cannot convert violations of N.C. Gen. Stat. §§ 15A-1343(b)(2) and (3) into a violation of N.C. Gen. Stat. § 15A-1343(b)(3a)."
 

 Id.
 

 at ----,
 
 776 S.E.2d at 745
 
 . Furthermore, the probation officer had testified that she had several telephone conversations with the defendant regarding his missed appointments and was even able to contact him during his travels to New Jersey.
 

 Id.
 

 at ----,
 
 776 S.E.2d at 742
 
 . Because there was insufficient evidence to support the trial court's finding of willful absconding, we reversed the judgment revoking the defendant's probation.
 

 Id.
 

 at ----,
 
 776 S.E.2d at 746
 
 .
 

 The instant case is distinguishable from
 
 Johnson
 
 and
 
 Williams
 
 for the simple, but significant, fact that Officer Russell was never aware of defendant's whereabouts after he left Randleman on 23 April 2016. When defendant accepted an eight-day painting job in Raleigh, he failed to notify Officer Russell of his employment opportunity prior to traveling. As a result, Officer Russell was unaware that defendant would not be in Randleman when she made her first unscheduled visit to his residence on 24 April 2016. Upon her arrival, Officer Russell met defendant's wife, Kim, who was "very upset." Kim told Officer Russell that she had not seen defendant since the previous day, when he took her car and bank card without permission and left
 
 *231
 
 the residence. These allegations prompted Officer Russell's second unscheduled visit less than two weeks later. When Officer Russell revisited the residence on 5 May 2016, Kim said that defendant still had not returned, and she did not know where he was. Consequently, on 9 May 2016, Officer Russell filed violation reports.
 

 Unlike the officer in
 
 Johnson
 
 , however, Officer Russell did not have the benefit of tracking defendant's movements via electronic monitoring device.
 
 Contra
 
 --- N.C. App. at ----,
 
 783 S.E.2d at 27
 
 . Moreover, unlike in
 
 *819
 

 Williams
 
 , Officer Russell had absolutely no means of contacting defendant during his unauthorized trip to Raleigh.
 
 Contra
 
 --- N.C. App. at ----,
 
 776 S.E.2d at 742
 
 .
 

 Defendant asserts that Officer Russell made a "premature" determination that he absconded, because she "did not testify that she attempted to contact [defendant] by telephone, by mail or by any other means ... [or] that she contacted any relatives or associates other than his wife listed in [his] file." As previously explained, however, once the State presented competent evidence establishing defendant's failure to comply with the terms of his probation, the burden was on
 
 defendant
 
 to demonstrate through competent evidence his inability to comply with those terms.
 
 Talbert
 
 ,
 
 221 N.C. App. at 652
 
 ,
 
 727 S.E.2d at 910-11
 
 . Defendant was given ample opportunity to do so at the hearing, but instead, he attempted to deflect the blame for his actions:
 

 A. So basically it boils down to the fact that [Kim]'s a liar, she's a manipulator, she doesn't get her way, and she's come down here on three different occasions before and she's filed 50B, she's filed assault on a females, had me locked up. As soon as the magistrate assigns me a bond, in 24, 48 hours she's down here crying, "I'm sorry," she gets people over at Shell Bonding to come and get me out.
 

 And so, basically, I'm thinking that she's taking care of the change of address with my probation officer. And I come to find out when I get back that she's been having an affair and that I'm not allowed to be at that trailer park anymore. And now I find out that she's been in contact-my probation officer's been in contact with the disgruntled wife, and the whole time the disgruntled wife's been telling her I did this and I did that. And my Maltese, Trixie, is like my child. My dog is still at that trailer. Every stick of clothes that I own is still at that trailer. Everything I own is still at that trailer. I haven't changed address. I haven't absconded. She's listening to this vindictive and deceitful individual who is telling me one thing and she's going back telling her another.
 

 And what it boils down to is she was trying to get me locked up so that she didn't have to deal with the confrontation when I found out ... That's what it boils
 
 *820
 
 down to. I haven't absconded. I've still-I still lived at that address I thought until I come back and found out somebody else had took my place.
 

 Despite defendant's accusation that Kim misinformed Officer Russell in his absence, during cross-examination by the State, defendant admitted that he failed to contact Officer Russell even after he returned from Raleigh:
 

 Q. Okay. And when you found [out on May] the 6th or 7th about [Officer Russell's unscheduled visits], did you contact your probation officer?
 

 A. No, I didn't. I didn't have a phone. I didn't have anything....
 

 ...
 

 A. -to answer your question, no, I didn't contact her immediately. I wasn't in any shape to do anything. I went to my mother's and I stayed in the bed for five days. I couldn't eat or anything so...
 

 Q. So you had an opportunity to call her then but you just didn't, correct?
 

 A. Yeah, but, I mean, I thought it was-I thought it was already taken care of. And, I mean, I wasn't-
 

 ...
 

 Q. I'm sorry. But when your wife kicked you out of the place you just said on the ... 6th or the 7th of May you were told to leave. Now, if you left that place, wouldn't
 
 *232
 
 you have contacted your probation officer then since you went to your mother's?
 

 A. Well, because I was only going to my mother's for a couple days. I wasn't-I wasn't moving. I was giving her a couple days to get over her little ole thing, and then as usual she gets her-you know, her feather-she gets her feathers ruffled and I go to jail for two days. In 48 hours they set me a bond, she comes and bonds me out, and then we continue the zoo as usual, I mean.
 

 Q. So my point is you knew that you were getting kicked out of that residence but you didn't contact the probation
 
 *821
 
 officer until you were arrested basically but you had several days to do that, correct?
 

 A. Yes, I guess you could look at it in that perspective, but I was looking at it from the-from a homeowner and a renter's-renter's rights perspective. And I still don't consider myself of being left there and moved as you're trying to allude to. I didn't move from there. Everything I own is still in that trailer.
 

 Despite the fact that he did not have a phone, it was defendant's responsibility to keep his probation officer apprised of his whereabouts. During defendant's testimony, he never explained how he tried to borrow anyone else's phone in order to let Officer Russell know that he was working. Indeed, defendant admitted that he made
 
 no
 
 attempt to contact Officer Russell. He never contacted her before he left home, while he was in Raleigh, or after he returned to Randleman on 6 or 7 May 2016. Even after learning about Officer Russell's unscheduled visits during his travels, defendant still did not contact her to correct any allegedly inaccurate information that Kim may have communicated. Instead, defendant claimed that he went to stay at his mother's house "for a couple days" until he was arrested in Greensboro on 9 May 2016.
 

 "Probation or suspension of sentence comes as an act of grace to one convicted of, or pleading guilty to, a crime."
 
 Murchison
 
 , 367 N.C. at 463,
 
 758 S.E.2d at 358
 
 (citation and quotation marks omitted). According to the plea transcript, defendant could have been sentenced to a maximum of 126 months' imprisonment based on his underlying offenses and prior record level. Although defendant received a favorable plea arrangement with suspended sentences, as the trial court stated, "[u]nfortunately, probation is not the priority he chose."
 

 We hold that there was sufficient competent evidence to establish defendant's willful violation of N.C. Gen. Stat. § 15A-1343(b)(3a), a valid condition of his probation. Therefore, the trial court did not abuse its discretion in finding that defendant willfully absconded from supervision, or in revoking his probation on that basis.
 
 Young
 
 ,
 
 190 N.C. App. at 459
 
 ,
 
 660 S.E.2d at 576
 
 .
 

 III. Clerical Errors
 

 Although we affirm the revocation of defendant's probation, we nevertheless must remand to the trial court for correction of two clerical errors appearing within the Findings section of the court's judgments. First, the trial court failed to select box 2a, which would have indicated
 
 *822
 
 that the court was "reasonably satisfied in its discretion that the defendant violated" the absconding condition of probation, as the court found at the hearing. Instead, the trial court selected box 2b, erroneously indicating that defendant "waived a violation hearing and admitted that he ... violated each of the conditions of his ... probation...." Second, box 3a of the judgments inaccurately suggest that the trial court found that defendant violated both of the conditions alleged in the 9 May 2016 violation reports, rather than N.C. Gen. Stat. § 15A-1343(b)(3a) alone.
 

 However, these are clearly clerical errors. In the Conclusion and Order section of the judgments, the trial court included the following additional findings, which accurately reflect the court's statements in open court:
 

 DENIES VIOLT-STATE HAS PROVED DEF ABSCONDED-STATE HAS NOT PROVED DEF FAILED TO NOTIFY PO OF ADDRESS CHANGE-PROBT REVOK-ACTV SENT-DEF GIVES NOTICE OF APPEAL-BOND SET AT $75,000 SEC
 

 "When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to
 
 *233
 
 the trial court for correction because of the importance that the record speak the truth."
 
 State v. Smith
 
 ,
 
 188 N.C. App. 842
 
 , 845,
 
 656 S.E.2d 695
 
 , 696 (2008) (citation and quotation marks omitted). Accordingly, we affirm the trial court's judgments revoking defendant's probation and activating his suspended sentences, but remand for the limited purpose of correcting these clerical errors.
 

 AFFIRMED; REMANDED FOR CORRECTION OF CLERICAL ERRORS.
 

 Judges HUNTER, JR. and BERGER concur.
 

 [1]
 

 At that time, case numbers 15 CRS 80278 and 15 CRS 81150 were renamed 16 CRS 96, and case numbers 15 CRS 80279 and 15 CRS 81151 were renamed 16 CRS 97.