IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-590

Filed 5 November 2025

Dare County, Nos. 15CRS051041-270, 15CRS051200-270, 15CRS051330-270, 15CRS051331-270, 15CRS051332-270, 15CRS051333-270, 15CRS051334-270, 15CRS051335-270, 15CRS051336-270, 17CR000013-270

STATE OF NORTH CAROLINA

v.

JERRY WAYNE STEPHENS, JR., Defendant.

Appeal by defendant from judgments entered 31 July 2023 by Judge Jerry R. Tillett in Superior Court, Dare County. Heard in the Court of Appeals 29 January 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Miranda S. Holley, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Amanda S. Zimmer, for defendant-appellant.*

STROUD, Judge.

Defendant appeals the trial court's judgments revoking his probation and activating his sentence. The trial court lacked jurisdiction to revoke Defendant's probation in file numbers 15CRS051200, 15CRS051330-36, and 17CRS000013 because it did not enter its judgments until after Defendant's probationary period had expired. We therefore vacate those judgments. But we affirm Defendant's judgment in file number 15CRS051041 because the violation reports sufficiently

alleged absconding as the grounds for Defendant's probation violation, and the trial court did not abuse its discretion in finding that Defendant willfully absconded from supervision.

## I. Background

In 2015 and 2017, the State indicted Defendant for various crimes involving drug use, breaking and entering, and larceny after breaking and entering. Although these charges included file numbers that were and were not subjects of this appeal, we limit our discussion to those file numbers Defendant included in his notice of appeal: 15CRS051041, 15CRS051200, 15CRS051330-36, and 17CRS000013. Defendant pled no contest to all the relevant charges on or about 31 July 2017. The trial court sentenced Defendant to an active sentence in certain file numbers not subject to this appeal. For each file number in this appeal, the court suspended his ten-month to twenty-one-month active sentence and placed him on supervised probation for thirty-six months. On the Judgment Suspending Sentence for file number 15CRS051041, the trial court checked box 3 in the "suspension of sentence section," indicating that "[t]his period of probation shall begin when . . . [D]efendant is released from incarceration." The court did not check this box on the remaining nine appealed judgments. During sentencing, the trial court stated that the "sentences will run consecutively in each case, probation concurrently."

After Defendant's release from prison, the State filed probation violation reports with the trial court on 4 October 2021. The reports alleged that Defendant

tested positive for illicit substances. On or about 31 May 2022, the trial court modified Defendant's probation in the appealed charges, extended his probation for eighteen months, and ordered him to comply with recovery court. The court issued orders for Defendant's arrest on or about 10 July 2023 after Defendant failed to comply with the recovery court's requirements. Additional probation violation reports, dated 24 July 2023, alleged that Defendant: owed arrearages "in the amount of $35,000.00"; failed to notify his probation officer of his whereabouts; and failed to submit to urine testing (as well as other similar violations regarding Defendant's supervision). The same judge who originally sentenced Defendant and extended his probation presided over Defendant's probation revocation hearing on 1 August 2023.

The trial court entered judgments that same day finding that Defendant willfully violated his probation and checked the box stating that the court revoked Defendant's probation for "willful violation of the condition(s) that he[ ] not commit any criminal offense . . . or abscond from supervision." The trial court revoked Defendant's probation and activated his sentence. On 7 August 2023, Defendant entered written notice of appeal in the above-referenced file numbers.

## II. Analysis

Defendant presents two arguments regarding the trial court's jurisdiction to revoke his probation. First, as to the judgments in file numbers 15CRS051200, 15CRS051330-36, and 17CRS000013, Defendant argues that the trial court lacked jurisdiction to revoke his probation after the probationary period expired. Second,

Defendant claims the trial court was without jurisdiction to revoke his probation in file number 15CRS051041 because the violation report failed to provide him "adequate notice" of the State's intent to revoke his probation for absconding from supervision.

Defendant also argues that the trial court abused its discretion in finding he willfully absconded from supervision and further erred in setting an anticipatory bond as a condition to his probation. For the following reasons, we vacate Defendant's judgments in file numbers 15CRS051200, 15CRS051330-36, and 17CRS000013, but affirm the judgment in file number 15CRS051041.

## A. Expiration of Probationary Period

We first address whether "the trial court lacked jurisdiction to revoke [Defendant's] probation because the probationary period had expired[,]" as it is dispositive for several of the probation violations. We agree with Defendant that his probation expired in file numbers 15CRS051200, 15CRS051330-36, and 17CRS000013 before the judgments revoking his probation were entered and thus vacate those judgments.

> The issue of a court's jurisdiction over a matter may be raised at any time, even for the first time on appeal or by a court *sua sponte*. It is well settled that a court's jurisdiction to review a probationer's compliance with the terms of his probation is limited by statute. An appellate court necessarily conducts a statutory analysis when analyzing whether a trial court has subject matter jurisdiction in a probation revocation hearing, and thus conducts a *de novo* review. Under a *de novo* review, the court considers the

matter anew and freely substitutes its own judgment for
that of the lower tribunal.

*State v. Tincher*, 266 N.C. App. 393, 395, 831 S.E.2d 859, 861-62 (2019) (citations, quotation marks, and brackets omitted).

North Carolina General Statute Section 15A-1346 provides for "commencement of probation" and states:

> (a) Commencement of Probation.--Except as provided in subsection (b), a period of probation commences on the day it is imposed and runs concurrently with any other period of probation, parole, or imprisonment to which the defendant is subject during that period.
>
> (b) Consecutive and Concurrent Sentences.--If a period of probation is being imposed at the same time a period of imprisonment is being imposed or if it is being imposed on a person already subject to an undischarged term of imprisonment, the period of probation may run either concurrently or consecutively with the term of imprisonment, as determined by the court. *If not specified, it runs concurrently.*

N.C. Gen. Stat. § 15A-1346 (2023) (emphasis added).

In *Tincher*, the defendant's "probation was revoked in both file 06 CRS 51515 and file 06 CRS 51521" and the defendant "did not challenge the revocation of probation in 06 CRS 51515." 266 N.C. App. at 395, 831 S.E.2d 859 at 862. The defendant agued "the revocation in 06 CRS 51521 was erroneous because the 06 CRS 51521 [j]udgment did not state that the probation was to run concurrently with the 06 CRS 51515 [j]udgment's probation or consecutively with the 06 CRS 51525 [j]udgment's active sentence." *Id*. Just as in this case, the defendant relied on North

Carolina General Statute Section 15A-1346 to argue his "probation ran concurrently with his active prison sentence already in effect in 06 CRS 51525." *Id.* at 395-96, 831 S.E.2d at 862. We noted that "the boxes on Lines 3 and 4, which specify when the period of probation would begin, are not marked or checked," which meant that the default rule that probation runs concurrently applied. *Id.* at 396, 831 S.E.2d at 862.

The State in *Tincher* argued that the plea agreement—which the defendant, his counsel, and the State signed—"contained language requiring the probationary period to run at the expiration of the active sentence in file 06 CRS 51525." *Id.* at 397, 831 S.E.2d at 862. The State in *Tincher* also argued

> the trial court provided additional language to show its intent to have the probationary period imposed in the 06 CRS 51521 [j]udgment run consecutively with [the d]efendant's active sentence by marking a box in the 06 CRS 51521 [j]udgment that states, "this sentence shall run at the expiration of sentence imposed in file number 06 CRS 51515." Thus, the State asserts that the trial court's failure to mark an additional box in the 06 CRS 51521 [j]udgment altering the probationary period was a clerical error.

*Id.* at 397, 831 S.E.2d at 862-63 (brackets omitted). The plea agreement in *Tincher* did not mention that the probationary period was to run consecutively and thus did not "reflect any intention for the probation to run consecutively . . . or to alter the default rule under [North Carolina General Statute Section] 15A-1346." *Id.* at 397, 831 S.E.2d at 863. As to whether there was a clerical error, we explained that

> even assuming the [r]ecord . . . showed a clerical error, we have limited authority in correcting clerical errors. If the

> correction of a clerical error affects the substantive rights of a party or if the correction corrects a substantive error, the Court is without authority to make a change. Furthermore, we have repeatedly rejected attempts to change the substantive provisions of judgments under the guise of clerical error.

*Id.* (citations and quotation marks omitted). We concluded "even assuming *arguendo* the trial court intended [the d]efendant's probations to run consecutively—the error was substantive and changing the 06 CRS 51521 [j]udgment would retroactively extend [the d]efendant's sentence. Therefore, we lack[ed] the authority to change" the judgment and vacated the order revoking the defendant's probation. *Id.* at 398, 831 S.E.2d at 863.

Defendant relies on *Tincher* to argue that vacating the order is required. The State, however, contends *Tincher* is not controlling because "the 2018 hearing transcript is controlling and shows that any error in the written judgment controls." The State argues the trial court's failure to check the boxes on the remaining judgments was a clerical error, and the intent of the trial court to have Defendant's sentences run consecutively can be found in the hearing transcripts. Specifically, the State cites *In re J.C.*, 236 N.C. App. 558, 562, 783 S.E.2d 202, 205 (2002), to assert "[i]f there is a discrepancy between the written order and the oral pronouncements, the transcript controls." The State maintains that the trial court's statement during sentencing that "the sentences will run consecutively in each case, probation concurrently[,]" is controlling over the clerical errors within the written judgments.

The State also notes that since one of the judgments marked the box stating "[t]his period of probation shall begin when . . . [D]efendant is released from incarceration"—even though the remaining judgments did not mark this box—the trial court meant to mark the box on all the judgments but the clerk simply made a mistake. The State also distinguishes this case from *Tincher* since none of the judgments in *Tincher* marked the box indicating probation would run consecutively to the active sentence. *See id.* Defendant argues that the one judgment with the marked box was a clerical error since the remaining judgments did not specify probation would run consecutively.

In *State v. Harwood*, this Court was presented with a similar issue where

> each of the five judgments in which the 2009 trial court placed defendant on supervised probation, the 2009 trial court failed to either check the box to order that the probation would begin upon [the] defendant's release from incarceration or check the box to order that the period of probation would begin at the expiration of another sentence.

243 N.C. App. 425, 430, 777 S.E.2d 116, 120 (2015). We noted that by not checking either box five times, it was "strongly suggest[ed] that the trial court did not make a mistake but rather intended for [the] defendant's probation to run concurrently with his incarceration." *Id.* This Court concluded

> this mistake would be a substantive error, rather than a clerical one. Changing this provision would retroactively extend [the] defendant's period of probation by more than one year and would grant the trial court subject matter jurisdiction to activate five consecutive sentences of 6 to 8

> months' imprisonment. Because this provision is substantive, we lack authority to change it under Rule 60(a).

*Id.* The State also argued comments made by the trial court at sentencing showed the trial court intended for defendant's probation to run concurrently. *See id.* The trial court stated "I want you to know that I have imposed a very strenuous and very serious probation period for you. I do that out of a sincere desire to see you walk on a very straight and narrow path." *Id.* We concluded not only were these statements "not inconsistent with the judgments on their face[,]" but also that "even if the 2009 trial court did make a mistake, we cannot change a substantive error." *Id.* at 431, 777 S.E.2d at 120 (citation omitted).

We disagree with the State that the transcript indicates the trial court's intention to have the probationary sentence run consecutive to the active sentence. In rendering its ruling, the trial court stated "sentences will run consecutively in each case, probation concurrently." Even though the trial court said "probation concurrently[,]" the State argues the trial court "was stating that the multiple active sentences would not be concurrent with each thereby 'specifying' that probation would begin after incarceration." However, specifying the active sentences would be consecutive but the probation would run concurrently hardly specifies probation was meant to run after the active sentences expired. The trial court did not clearly state during sentencing that it would not be using the default rule and thus probation would start after the active sentences. We disagree with the State's interpretation of

the transcript.

Even if the transcript was clear, in *Harwood* we concluded the "trial court's comments to [the] defendant . . . were not inconsistent with the judgments on their face" and then immediately clarified that "even if the . . . trial court did make a mistake, we cannot change a substantive error." *Harwood*, 243 N.C. App. at 431, 777 S.E.2d at 120 (citation omitted). And we applied this logic in *Tincher*, even though that case did not involve a transcript, concluding "even assuming *arguendo* the trial court intended [the d]efendant's probations to run consecutively—the error was substantive and changing the 06 CRS 51521 Judgment would retroactively extend [the d]efendant's sentence. Therefore, we lack the authority to change it." *Tincher*, 266 N.C. App. at 398, 831 S.E.2d at 863.

We are not convinced we should depart from our reasoning in *Tincher* and *Harwood* and thus conclude the trial court intended Defendant's probation to run concurrently in file numbers 15CRS051200, 15CRS051330-36, and 17CRS000013 with the active sentence. However, in the judgment with file number 15CRS051041, the box indicating the probationary sentence would begin after the active sentence was checked. This is unlike *Tincher* and *Harwood* where the trial court did not check that box on any of the relevant file numbers. *See id.* at 396-97, 831 S.E.2d at 862; *see also Harwood*, 243 N.C. App. at 427, 777 S.E.2d at 118. Defendant argues this was a clerical error since the trial court indicated probation was to run concurrently. The State does not address how this Court should determine the effect of the single

checked box if we were to determine the trial court did not indicate probation was to run after the active sentence at the sentencing hearing. The case cited by Defendant, *State v. Lawing*, 12 N.C. App. 21, 182, S.E.2d 10 (1971), merely supports the general proposition that clerical errors may be remanded to the trial court. But in *Lawing*, the clerical error was in the judgment being appealed. *Id*. at 23, 182 S.E.2d at 11-12. Here, the underlying judgments Defendant claims include clerical errors were never appealed. Defendant has appealed the judgments revoking his probation, not the original judgments entering the probation sentences. The error he alleges is a clerical error in the original judgments, which are not before us on appeal.

Defendant has presented no authority which allows us to remand a judgment for correction of a clerical error where that judgment was never appealed, nor can we find any such authority. Defendant did not timely appeal the judgment in file number 15CRS051041 and even assuming *arguendo* that judgment included a clerical error, we have no authority to correct it. *See State v. Pennell*, 367 N.C. 466, 471-72, 758 S.E.2d 383, 387 (2014) ("[The] defendant failed to appeal from his original judgment. He may not now appeal the matter collaterally via a proceeding contesting the activation of the sentence imposed in the original judgment. As such, [the] defendant's present challenge to the validity of his original conviction is improper. Because a jurisdictional challenge may only be raised when an appeal is otherwise proper, . . . we hold that a defendant may not challenge the jurisdiction over the original conviction in an appeal from the order revoking his probation and activating

his sentence. The proper procedure through which [the] defendant may challenge the facial validity of the original indictment is by filing a motion for appropriate relief under [North Carolina General Statute Section] 15A-1415(b) or petitioning for a writ of habeas corpus. Our holding here does not prejudice [the] defendant from pursuing these avenues." (citation and footnote omitted)).

We conclude the trial court was without jurisdiction to revoke Defendant's probation in file numbers 15CRS051200, 15CRS051330-36, and 17CRS000013. However, as the box in file number 15CRS051041 indicating Defendant's probation would start after his active sentence's completion, and this probation was revoked within the time period after his incarceration but before his probation expired, the trial court still had jurisdiction to revoke probation. We will thus only reach the remaining issues in Defendant's appeal as to file number 15CRS051041.

Regarding the judgment in file number 15CRS051041, Defendant also argues the trial court was without jurisdiction to modify his probation in May 2022 after a February 2022 probation violation report. We reject this argument for the same reasons discussed above; Defendant was released from his active sentence in November 2019. Judgment 15CRS051041 provided his three-year term of probation would begin after his release from incarceration, and the violation report and order were both filed before the original expiration of Defendant's probation in November 2022.

**B. Notice of Alleged Absconding Violation**

As an additional jurisdictional challenge, Defendant argues that the trial court lacked jurisdiction to revoke his probation in file number 15CRS051041 because he "did not receive adequate notice that the State sought to revoke his probation for absconding" from supervision. We disagree.

As to "whether the probation violation reports sufficiently alleged that defendant absconded supervision[,]" this Court's

> analysis is guided by our [Supreme Court's] discussion in *State v. Moore*, 370 N.C. 338, 807 S.E.2d 550 (2017), in which [the Court] addressed whether a probation violation report sufficiently alleged that the defendant had committed the revocable violation of committing a new criminal offense while on probation as prohibited by [North Carolina General Statute Section] 15A-1343(b)(1).

*State v. Crompton*, 380 N.C. 220, 225, 868 S.E.2d 48, 51 (2022).

Under North Carolina General Statute Section 15A-1345(e),

> [b]efore revoking or extending probation, the court must, unless the probationer waives the hearing, hold a hearing to determine whether to revoke or extend probation and must make findings to support the decision and a summary record of the proceedings. The State must give the probationer notice of the hearing and its purpose, including a statement of the violations alleged.

N.C. Gen. Stat. § 15A-1345(e) (2023).

As part of Defendant's regular conditions of probation under North Carolina General Statute Section 15A-1343(b) (2023), Defendant was required to "[n]ot abscond, by willfully avoiding supervision or by willfully making . . . [his] whereabouts unknown to the supervising probation officer."

- 13 -

In the violation report for file number 15CRS051041, the State alleged, *inter alia*:

> Of the conditions of probation imposed in [the] judgment, . . . [D]efendant has willfully violated:
>
> 1. "Report as directed by the [c]ourt, Commission or the supervising officer to the officer at reasonable times and places" in that on or about 7/9/2023, . . . Defendant left his treatment program at Dare Challenge. For over 9 days . . . Defendant failed to report his whereabouts.
>
>     . . . .
>
> 2. Condition of Probation "Not be away from . . . [D]efendant's residence during the specificized hours as set by the court or probation officer" in that as of 7/9/2023, . . . Defendant failed to notify this officer of his whereabouts, once he left his treatment program at Dare Challenge. This also violated his condition of curfew, as this officer could not properly check [sic] . . . Defendant at his required curfew time of 7pm-6am, for roughly 9 days.

(Ellipsis omitted and capitalization altered.)

Defendant contends that because the violation report did not explicitly identify "absconding" as grounds for violation but only described his actions constituting the alleged violation, the State failed to provide adequate notice as to the State's intention to revoke probation on those grounds. In Defendant's view, we should interpret the language and requirement of providing a "probationer notice of the hearing and *its purpose, including a statement of the violations alleged*[,]" *id.* (emphasis added,) as requiring the State to explicitly identify the alleged condition violation. Because the

- 14 -

State did not explicitly use the term "absconding" or any variation thereof in the violation report, Defendant contends he did not receive adequate notice of absconding from supervision as grounds for his probation violation.

Our Supreme Court in *State v. Moore*, however, explained this is not the proper interpretation of North Carolina General Statute Section 15A-1345(e). *See* 370 N.C. 338, 341, 807 S.E.2d 550, 552 (2017). In *Moore*, the defendant appealed the trial court's revocation of his probation after the State filed reports alleging he violated certain probation conditions. *See id.* at 339-40, 807 S.E.2d at 551-52. Similar to this case, the defendant in *Moore* argued that "because the probation violation reports did not specifically list the 'commit no criminal offense' condition as the condition violated, the reports did not provide the notice that subsection 15A-1345(e) requires." *Id.* at 340, 807 S.E.2d at 552.

In analyzing the language of Section 15A-1345(e), our Supreme Court explained:

> It follows that the phrase "a statement of the violations alleged" refers to a statement of what a probationer *did* to violate his conditions of probation. It does not require a statement of the underlying conditions that were violated.
>
> In effectuating legislative intent, it is our duty to give effect to the words actually used in a statute and not to delete words used or to insert words not used. [The d]efendant would have us insert a requirement into the statute that simply is not there: one that requires the State to provide notice of the specific condition of probation that defendant allegedly violated. This approach would effectively add words to the statute so that the statute would read "a

> statement of the violations alleged *and the conditions of probation allegedly violated.*" But the statute as it actually reads, without the italicized words, requires only a statement of the actions that violated the conditions, not of the conditions that those actions violated.

*Id.* at 341, 807 S.E.2d at 552-53. (emphasis in original) (citations, quotation marks, and brackets omitted).

Here, the violation report stated "what . . . [Defendant] *did* to violate his conditions of probation." *Id.* (emphasis in original). The report alleged Defendant "left his treatment program at Dare Challenge" and "[f]or over 9 days . . . failed to report his whereabouts." Under our Supreme Court's guidance in *Moore*, this statement sufficiently identifies what Defendant "*did* to violate his conditions of probation." *Id.* (emphasis in original). The probation violation report gave Defendant sufficient notice under Section 15A-1345(e). Use of the word "absconding" was not required since the report alleged Defendant's actions which violated his probation conditions.

## C. Probation Violation

Defendant argues the trial court abused its discretion and "erred" in finding he willfully absconded from supervision, violating a condition of his probation. As to Defendant's argument that the State failed to present sufficient evidence to show he had willfully absconded, we review only to determine if the evidence would "reasonably satisfy" the judge in the exercise of his discretion that the violation occurred:

- 16 -

> The alleged violation by the defendant of a valid condition upon which a sentence in a criminal case was suspended need not be proven beyond a reasonable doubt. All that is required is that the evidence be such as to reasonably satisfy the judge in the exercise of his sound discretion that the defendant has violated a valid condition upon which the sentence was suspended.

*State v. Robinson*, 248 N.C. 282, 285-86, 103 S.E.2d 376, 379 (1958) (citations omitted).

"Our Courts have continuously held that a suspended sentence may not be activated for failure to comply with a term of probation unless the defendant's failure to comply is willful or without lawful excuse." *State v. Tennant*, 141 N.C. App. 524, 527, 540 S.E.2d 807, 808 (2000) (citations, quotation marks, and brackets omitted).

"An abuse of discretion will be found when the trial court's ruling is 'manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.'" *State v. Johnson*, 246 N.C. App. 132, 134, 782 S.E.2d 549, 551 (2016) (quoting *State v. Campbell*, 359 N.C. 644, 673, 617 S.E.2d 1, 19 (2005)).

### 1. *Finding of absconding*

Defendant argues that even if he received sufficient notice as to the violation of absconding, the trial court nevertheless abused its discretion in finding that he willfully absconded from supervision because the State's evidence showed his probation officer, Dawn Brickhouse,

> personally did nothing to locate [Defendant] after being told that he had left Dare Challenge. His failure to communicate with her for a 9-day period after 5 years of

probation – considering her lack of records related to any attempt to reach him for those 9 days – was insufficient to support a finding of willful absconding.

We first note that the trial court stated its findings regarding absconding in open court:

> the [c]ourt finds that upon numerous requests by . . . [D]efendant, the [c]ourt has repeatedly offered some leniency and attempted amelioration, including placing . . . [D]efendant in drug court, specifically at his request saying he'd never had that opportunity. Thereafter, there were several violations of the terms and conditions of drug court, some of which resulted in periods of incarceration. . . . [D]efendant also was ordered and directed to report in response to a violation to a program of inpatient treatment. . . . [D]efendant was also under a condition that should he leave voluntarily or without authorization or excuse or be involuntarily terminated that he should be immediately arrested. . . . [D]efendant was aware of that condition. . . . [D]efendant removed himself from the ability of officers to supervise directly or indirectly during such period. He was for a period unsupervised, the probation officer could not test, no member of the probation department knew . . . [D]efendant's whereabouts, despite several attempts to locate him. And this was at a time that . . . [D]efendant was under the heightened conditions and scrutiny of having been previously adjudicated in violation of conditions of probation and placed in a recovery paradigm.
>
> [The c]ourt finds that this is the functional equivalent of failing to make himself reasonably available for supervision and otherwise known as absconding.

To revoke a defendant's probation, the State must first "present[] competent evidence establishing a defendant's failure to comply with the terms of probation[.]" *State v. Melton*, 258 N.C. App. 134, 136, 811 S.E.2d 678, 680 (2018) (citation and

quotation marks omitted). The burden then shifts to the defendant "to demonstrate through competent evidence an inability to comply with the terms." *Id.* (citation and quotation marks omitted).

This Court in *State v. Melton* explained that "[p]rior to our Legislature's enactment of the Justice Reinvestment Act of 2011 ('JRA'), the term 'abscond' was not defined by statute." *Id.* at 137, 811 S.E.2d at 681 (citation omitted). The JRA was passed as "part of a national criminal justice reform effort which, among other changes, made it more difficult to revoke offenders' probation and send them to prison." *Id.* at 138, 811 S.E.2d at 681 (citation and quotation marks omitted). Now, under North Carolina General Statute Section 15A-1343, a criminal defendant absconds when he "willfully avoid[] supervision or . . . willfully mak[e] [his] whereabouts unknown to the supervising probation officer." N.C. Gen. Stat. § 15A-1343(b)(3a). "Under the statutory definition . . . , we have held that a defendant absconds when he willfully makes his whereabouts unknown to his probation officer, and the probation officer is unable to contact the defendant." *Melton*, 258 N.C. App. at 138, 811 S.E.2d at 681 (citation omitted).

In *Melton*, this Court concluded "there was insufficient competent evidence" to support a finding the defendant *willfully* absconded from supervision where "the probation officer could not testify with any specificity and did not have records regarding her attempts to locate [the] defendant during th[e] two-day period" between her missed probation appointments and the absconding allegation. *Id.* at 140, 811

S.E.2d at 683 (emphasis added). Like *Melton*, here, Defendant argues that the testimony of his probation officer, along with the violation reports, lacked "specificity" as to the attempts made to locate or get in contact with Defendant during the nine-day period between him leaving the Dare Challenge treatment program and his arrest.

The State, however, argues the facts in the case are more similar to those in *State v. Trent*, 254 N.C. App. 809, 803 S.E.2d 224 (2017). In *Trent*, this Court affirmed a trial court's finding that the defendant did willfully abscond from supervision when he "accepted an eight-day painting job in Raleigh," but failed to report this job opportunity to his probation officer before leaving his residence. *Id.* at 818, 803 S.E.2d at 230. "As a result, [the defendant's probation officer] was unaware that [the] defendant would not be in Randleman when she made her first unscheduled visit to his residence on 24 April 2016." *Id.*

Here, during the revocation hearing on 31 July 2023, Ms. Brickhouse testified that Defendant was required to attend the Dare Challenge residential treatment program in Wanchese as part of his recovery court conditions, and that Defendant began Dare Challenge "[t]owards the middle of June [2023]. The violation report alleged Defendant left the program "on or about" 9 July 2023. Ms. Brickhouse testified Defendant left the program without permission on 11 July 2023. Per the conditions of the recovery court, Ms. Brickhouse testified Defendant was required to "notify" her when he left the program, but Defendant did not do so. It was undisputed

that Defendant did not notify Ms. Brickhouse that he left the residential treatment program. Defendant's testimony confirmed that he did not even attempt to notify her. He testified that he did not notify Ms. Brickhouse when he left Dare Challenge because he left his phone there. He also testified that since he did not have his phone when he left Dare Challenge, he did not have Ms. Brickhouse's phone number.

The facts in this case are distinguishable from those presented in *Melton*. In *Melton*, the defendant had been missing for only two days between her probation appointment and the absconding allegation. 258 N.C. App. at 140, 811 S.E.2d at 683. This Court also determined the defendant had not been subject to "any . . . intermediate punishment" before her sentence's suspension, contrary to the Legislature's intent behind the JRA in "activati[ng] . . . probationary sentences . . . only . . . as a last resort and after the use of the other tools available." *Id.* at 140, 811 S.E.2d at 682. This Court concluded the probation officer's inability to "testify with any specificity" as to attempts to locate the defendant, "*considered together* with the two-day period" and absence of any "intermediate punishment" did "not support a judgment of revocation." *Id.* at 140, 811 S.E.2d at 683. Defendant misconstrues the lack of specific evidence of attempts by the probation officer to locate the defendant as outlined in *Melton* as an all-or-nothing determinative factor in concluding whether a defendant's probation can rightfully be suspended.

Unlike *Melton*, here, Defendant's whereabouts were unknown for nine days between the time of his unauthorized departure from Dare Challenge and his arrest.

In addition, the defendant in *Melton* was not subject to additional requirements such as those imposed on Defendant by the recovery court and the Dare Challenge program. The trial court noted the additional requirements imposed on Defendant while at Dare Challenge. While at Dare Challenge, Defendant was "under a condition that should he leave voluntarily or without authorization or excuse or be involuntarily terminated that he should be immediately arrested." Further, "[D]efendant was aware of [this] condition." The trial court found that Defendant "removed himself from the ability of officers to supervise him directly[,]" or "indirectly" through communicating with his probation officer and making his whereabouts known after leaving Dare Challenge. Ms. Brickhouse testified that after Defendant left Dare Challenge, there were several attempts to locate him by sending local law enforcement officers to his listed residence, but Defendant "was not there." Unlike *Melton*, during Defendant's nine-day absence, he was "under the heightened conditions and scrutiny of having been previously adjudicated in violation of conditions of probation and placed in a recovery paradigm." The trial court did not abuse its discretion by finding that Defendant's actions of leaving Dare Challenge without authorization and failing to inform his probation officer were "the functional equivalent of failing to make himself reasonably available for supervision and otherwise known as absconding."

Under *Melton*, the State here "present[ed] competent evidence establishing . . . [D]efendant's failure to comply with the terms of [his] probation." 258 N.C. App. at

136, 811 S.E.2d at 680 (citation and quotation marks omitted). The burden then shifted to Defendant to "demonstrate through competent evidence an inability to comply with th[os]e terms[ ]" of his probation. *Id.* (citation and quotation marks omitted). At the hearing, Defendant testified he left Dare Challenge prematurely due to another participant who was allegedly using drugs, which made Defendant uncomfortable as he was "clean" at that time. When he left Dare Challenge, Defendant did not take his phone with him and testified he did not "have [Ms. Brickhouse]'s number." When he arrived at his house, the mother of Defendant's children "agreed to help [him] get in contact with probation," but that, "[a]t the same time[,] [he] still did not have a phone." On cross-examination, however, Defendant acknowledged the individual who was using drugs and the main reason he claimed he left Dare Challenge was actually "kicked . . . out" of the program before Defendant left. Also, though Defendant himself did not have a phone, he further acknowledged that his ex-wife, with whom he was staying after leaving Dare Challenge, did have a phone. The trial court did not abuse its discretion by finding Defendant failed to demonstrate his "inability" to comply with his probation terms by failing to notify his probation officer after he left Dare Challenge in violation of his recovery court and probation conditions.

## D. Anticipatory Bond

Finally, Defendant argues that the trial court further erred in "setting an anticipatory bond as a condition" of Defendant's probation. But we do not have

appellate jurisdiction to address this argument.

In an order modifying Defendant's probation, entered 6 June 2023, the trial court added a condition that "[s]hould . . . Defendant be unsuccessfully discharged from treatment, have a positive/refused drug test, or violate any of the conditions of this [o]rder, [ ]he may be immediately subject to arrest and placed under a $100,000.00 secured bond[.]" Defendant claims the trial court "had no authority to dictate [Defendant] be arrested and held on a specific [anticipatory] bond." However, we will not review this argument as Defendant did not appeal from the 6 June 2023 order and did not preserve the issue for appellate review by this Court.

The anticipatory bond condition Defendant seeks to challenge in this appeal was imposed in an order modifying probation entered in June 2023; the probation revocation order subject to this appeal was entered in August 2023. The June 2023 order is not before this Court.

A similar situation was presented in *State v. Hilbert*, where the trial court had included an additional condition to the defendant's probation, stating that upon the defendant's "[f]irst positive [drug] test[,] he is to be immediately arrested and placed under $100,000.00 cash bond to await the probation violation hearing." 145 N.C. App. 440, 445, 549 S.E.2d 882, 885 (2001). We concluded that the defendant's challenge was not properly preserved for appellate review for two reasons. *Id.* at 445, 549 S.E.2d at 885-86. First, the relevant convictions "were neither included in his [p]etition nor in our order allowing certiorari." *Id.* Second, the "defendant [had] failed

to object *at sentencing* to the probationary condition at issue and his present challenge thereto has not been preserved for our review." *Id.* The Court cited Rule 10 of the North Carolina Rules of Appellate Procedure, *id.*, which provides that "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). We thus concluded that the judgment imposing the anticipatory bond condition was not subject to review.

Here, Defendant makes arguments as to his sentencing and contends that his challenge to the anticipatory bond is automatically preserved under North Carolina General Statute Section 15A-1446, which states:

> (d) Errors based [upon] . . . the following grounds may be the subject of appellate review even though no objection or motion has been made in the trial division:
>
> . . . .
>
>> (18) The sentence imposed was [not allowed] at the time imposed, exceeded the maximum [allowed] by law, was illegally imposed, or is otherwise invalid as a matter of law.

N.C. Gen. Stat. § 15A-1446(d)(18) (2023).

But we are considering the appeal of the order revoking Defendant's probation, not the sentence imposed in the original judgment or the June 2023 order modifying his probation. The "sentence imposed," specifically the anticipatory bond condition,

was imposed by an order not before this Court. Defendant did not notice appeal or petition for review by certiorari as to the June 2023 order, so this Court does not have appellate jurisdiction to review that order. We recognize that on some "rare occasions" in "exceptional cases," this Court has treated a brief as a petition for certiorari to review a meritorious argument. *See Doe v. City of Charlotte*, 273 N.C. App. 10, 23, 848 S.E.2d 1, 11 (2020). Here, we decline to consider this issue *sua sponte* by certiorari. In addition, our record would not be sufficient to review Defendant's argument since it would require relevant information from the June 2023 hearing, which we do not have.

Because we have no appellate jurisdiction to review the June 2023 order which imposed the anticipatory bond, we cannot review Defendant's argument regarding the bond.

## III. Conclusion

We vacate the judgments revoking Defendant's probation in file numbers 15CRS051200, 15CRS051330-36, and 17CRS000013. The trial court did not have jurisdiction to enter these judgments. However, we affirm the revocation of probation in file number 15CRS051041. The violation report sufficiently alleged absconding as the grounds for Defendant's probation violation, and the trial court did not abuse its discretion in finding Defendant absconded from supervision.

VACATED IN PART; AFFIRMED IN PART.

Chief Judge DILLON and Judge ZACHARY concur.