IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-516

Filed 1 April 2026

Surry County, Nos. 21CRS052733-850, 23CR000585-850

STATE OF NORTH CAROLINA

v.

CHRISTOPHER RAY WHITT

Appeal by defendant from judgment entered 17 December 2024 by Judge Angela B. Puckett in Surry County Superior Court. Heard in the Court of Appeals 10 February 2026.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Rory Agan, for the State.*

*Cooper Strickland for defendant-appellant.*

ZACHARY, Judge.

Defendant Christopher Ray Whitt appeals from the trial court's judgment revoking his probation. On appeal, Defendant argues that the court abused its discretion by revoking his probation based on the court's finding that he absconded from supervision. After careful review, we affirm the trial court's judgment.

## I.    Background

On 14 May 2024, Defendant entered into a plea arrangement with the State, pursuant to which he agreed to plead guilty to possession of methamphetamine;

possession of drug paraphernalia; maintaining a vehicle for the keeping or selling of controlled substances; and driving while his license was revoked, with the stipulation that the charges "be consolidated for sentencing" and the sentence "be suspended on terms of supervised probation." The trial court entered judgment against Defendant, sentencing him to 9 to 20 months' imprisonment in the custody of the North Carolina Department of Adult Correction. The court suspended Defendant's sentence and placed him on supervised probation for 24 months. As a condition of his probation, the court ordered Defendant to "enroll [in] and successfully complete DART."[1] On 20 May 2024, Defendant was designated a high-risk offender, and a curfew and electronic monitoring were imposed as additional conditions of his probation.

The next month, on 10 June 2024, Defendant's probation officer filed the first violation report, in which he alleged that Defendant had violated his probation by, *inter alia,* absconding from supervision by leaving the DART Cherry program. A second violation report was filed on 2 October 2024, alleging that Defendant had violated three other conditions of his probation. On 21 October 2024, Defendant's probation officer filed a third violation report, again alleging that Defendant had violated a condition of his probation by absconding from supervision.

On 17 December 2024, Defendant's violation reports came on for hearing in

---

[1] Defendant describes the DART (Drug Abuse & Alcoholism Residential Treatment) Cherry program as "a 300-bed residential treatment facility in Goldsboro responsible for the delivery of substance use disorder treatment services to probationers sent by the courts and parolees released from the state prison system and transitioning back into the community."

Surry County Superior Court. The trial court found that Defendant had absconded from supervision, revoked his probation, and activated his suspended sentence.

Defendant gave oral notice of appeal.

## II.    Discussion

Defendant argues that the trial court abused its discretion by revoking his probation "because there was insufficient evidence to support a finding that he willfully absconded where the record shows he was subject to electronic monitoring as of May 2024."

### A. Standard of Review

An alleged violation of a condition of probation need not be proven beyond a reasonable doubt: the evidence need only "be such as to reasonably satisfy the judge in the exercise of his sound discretion that the defendant has willfully violated a valid condition of probation or that the defendant has violated without lawful excuse a valid condition upon which the sentence was suspended." *State v. Krider*, 258 N.C. App. 111, 112–13, 810 S.E.2d 828, 829 (citation omitted), *aff'd as modified*, 371 N.C. 466, 818 S.E.2d 102 (2018) (per curiam).

"We review a trial court's decision to revoke a defendant's probation for abuse of discretion." *State v. Melton*, 258 N.C. App. 134, 136, 811 S.E.2d 678, 680 (2018). "A trial court abuses its discretion when a ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.* (cleaned up).

**B. Analysis**

"Before revoking a defendant's probation, a trial court must conduct a hearing to determine whether the defendant's probation should be revoked, unless the defendant waives the hearing." *State v. Moore*, 370 N.C. 338, 340, 807 S.E.2d 550, 552 (2017).

"Once the State has presented competent evidence establishing a defendant's failure to comply with the terms of probation, the burden is on the defendant to demonstrate through competent evidence an inability to comply with the terms." *State v. Trent*, 254 N.C. App. 809, 812–13, 803 S.E.2d 224, 227 (2017) (cleaned up), *disc. review denied*, 370 N.C. 576, 809 S.E.2d 599 (2018).

A trial court's authority to revoke probation is statutorily limited. N.C. Gen. Stat. § 15A-1344(a) (2025). Absconding, pursuant to N.C. Gen. Stat. § 15A-1343(b)(3a), is a regular condition of probation and one of the few permitted bases for revocation. *Id.*

A defendant who is subject to probation must "[n]ot abscond by willfully avoiding supervision or by willfully making the defendant's whereabouts unknown to the supervising probation officer, if the defendant is placed on supervised probation." *Id.* § 15A-1343(b)(3a). "Under the statutory definition set out in [N.C. Gen. Stat.] § 15A-1343(b)(3a), we have held that a defendant absconds when he willfully makes his whereabouts unknown to his probation officer, and the probation officer is unable to contact the defendant." *Melton*, 258 N.C. App. at 138, 811 S.E.2d at 681.

In the instant case, the first violation report, filed on 10 June 2024, alleged five probation violations. Relevant to Defendant's appeal is the first allegation:

> 1.    Regular Condition of Probation: General Statute [§] 15A-1343(b)(3a) "Not to abscond, by willfully avoiding supervision or by willfully making the supervisee's whereabouts unknown to the supervising probation officer" in that,
> [DEFENDANT] SIGNED THE DART CHERRY RULES AND REGULATIONS ON MAY 29, 2024 PRIOR TO HIS ENROLLMENT INTO DART CHERRY ON JUNE 4, 2024. IN THE RULES IT STATED[:] "REMAIN ON THE FACILITY PREMISES ATTEMPTING TO LEAVE WILL BE CONSIDERED ABSCONDING" AND IN THAT [DEFENDANT] LEFT THE DART CHERRY PROGRAM ON OR ABOUT JUNE 9, 2024. [DEFENDANT] HAS THEREBY ABSCONDED SUPERVISION.

Defendant's probation officer subsequently filed two additional violation reports alleging that Defendant had violated several conditions of his probation; the third violation report, filed on 21 October 2024, alleged:

> 1.    Regular Condition of Probation: General Statute [§] 15A-1343(b)(3a) "Not to abscond, by willfully avoiding supervision or by willfully making the supervisee's whereabouts unknown to the supervising probation officer" in that,
> [DEFENDANT] FAILED TO APPEAR IN COURT ON OCTOBER 9, 2024 AND HAS FAILED TO REPORT TO THE PROBATION OFFICE. [DEFENDANT] HAS NOT BEEN AT HIS LAST KNOWN ADDRESS . . . DURING ATTEMPTED CONTACTS ON SEPTEMBER 15, 2024, SEPTEMBER 23, 2024, OCTOBER 1, 2024, OCTOBER 6, 2024 AND OCTOBER 14, 2024. AS OF THE DATE OF THIS VIOLATION REPORT, [DEFENDANT'S] WHEREABOUTS ARE UNKNOWN WITH ALL EFFORTS TO LOCATE [DEFENDANT] BEING UNSUCCESSFUL AND [DEFENDANT] HAS THEREBY

ABSCONDED SUPERVISION.

The violation reports came on for hearing on 17 December 2024. At the hearing, Defendant's probation officer testified that Defendant left the DART Cherry program on 9 June 2024, after which the probation officer "made several attempts to meet with him at his residence, which were unsuccessful." Defendant's whereabouts were unknown until the probation officer made contact with Defendant in August 2024, after Defendant was arrested. Defendant admitted that he had "been traveling back and forth to the State of Virginia" during those two months. The probation officer further testified that his "last appointment or contact" with Defendant was on 20 August 2024, despite his several unsuccessful attempts to locate Defendant at his residence in September and October 2024 and leaving a door tag after each visit.

Defendant also testified at the hearing, stating that "[f]rom June to August" 2024, he was "on the road"—that is, he was walking "[f]rom Goldsboro to Mt. Airy, North Carolina"—and from August to 27 September, he "pretty much stayed" with his father while his father was in the hospital. After his father's funeral on 4 October, Defendant "didn't have a residence." Defendant explained that "once [he] was considered an absconder," he did not keep his probation officer notified that he was "staying different places."

Defendant was arrested again on 2 December 2024.

The trial court found that Defendant had willfully absconded from supervision and entered a detailed order:

> Defendant did violate the condition of his probation in that he did abscond supervision in that he left the DART CHERRY program on June 9, 2024 in violation of the [c]ourt's order and made his whereabouts unknown to his probation officer until he was arrested by the Sheriff's Department in August 2024. After he was picked up he was released from custody and continued to abscond and evade supervision in that he failed to report to his probation officer on September 10, 2024 and failed to respond to door tags left for him at his reported residence on September 15 and 23, 2024 and October 1 and 2, 2024. [Defendant's] probation officer had no further contact with [Defendant] until his arrest a second time. [Defendant] further admitted he had left the State of North Carolina after he left Dart Cherry in violation of the [c]ourt's order. The [c]ourt finds [Defendant's] testimony was not credible and that . . . actions were taken by [Defendant] to abscond and avoid supervision.

The court concluded that "Defendant violated the condition willfully and without valid excuse at a time prior to the expiration or termination of his probation" and revoked Defendant's probation. After careful consideration of these facts, we conclude that there was sufficient evidence presented to support the trial court's finding that Defendant willfully absconded from supervision. *See Krider*, 258 N.C. App. at 112–13, 810 S.E.2d at 829.

On appeal, Defendant contends that because "the record does not show that th[e] condition [of electronic monitoring] was removed . . . [he] was presumably subject to electronic monitoring from approximately 16 May to 13 September 2024, including the periods of time when [he] was alleged to have absconded"; accordingly, the trial court abused its discretion by "fail[ing] to ensure that the State complied

with its own policies to use more proactive and cost-effective tools, including electronic monitoring, to avoid the unnecessary revocation of [Defendant]'s probation." Defendant suggests that the probation officer could have ascertained Defendant's whereabouts if he had utilized the electronic-monitoring data, and then Defendant's whereabouts would not have been unknown. However, the probation-hearing transcript and record do not indicate that Defendant's electronic-monitoring data were being transmitted to his probation officer during his absence. Indeed, there was no evidence presented that Defendant had been fitted with an electronic monitor at any time, that the monitor had not been removed, and that the monitor was charged and operating. Moreover, Defendant raised no argument at the hearing that his whereabouts were not unknown because he was subject to electronic monitoring. This argument is overruled.

Defendant further asserts that his "probation officer was on notice that he was staying with his dying father in the hospital during this period, but the record does not show that his probation officer contacted local hospitals—a basic investigative step in this context." Assuming, *arguendo*, that the probation officer failed to contact the local hospitals when Defendant was allegedly present, he only claimed to have been at the hospital from August to 27 September. Thus, this argument does not address Defendant's willful absconding from supervision from June to August and during October. This argument is similarly overruled.

### III.   Conclusion

We conclude "that there was sufficient competent evidence to establish [D]efendant's willful violation of N.C. Gen. Stat. § 15A-1343(b)(3a), a valid condition of his probation. Therefore, the trial court did not abuse its discretion in finding that [D]efendant willfully absconded from supervision, or in revoking his probation on that basis." *Trent*, 254 N.C. App. at 821, 803 S.E.2d at 232.

AFFIRMED.

Judges TYSON and HAMPSON concur.